328 A.2d 464

**William H. R. CASEY, Appellee,**

**v.**

**The ZONING HEARING BOARD OF WARWICK TOWNSHIP, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 15, 1974.

Decided Nov. 20, 1974.

220

222

---

Peter A. Glascott, Doylestown, Stephen B. Harris, Harris & Harris, Warrington, for appellant.

Robert W. Valimont, William B. Moyer, Richard P. McBride, Doylestown, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

EAGEN, Justice.

This is an appeal from an order of the Commonwealth Court directing the building inspector of Warwick Township to issue a building permit to the appellee, William

H. R. Casey, upon the "filing of appropriate building plans, drawings, and specifications consistent with the plot plan heretofore filed and in compliance with the Township Building Code." The salient facts are as follows.

On March 13, 1967, the Board of Supervisors of Warwick Township [Board of Supervisors] entered into an agreement with a firm of planning and development consultants to prepare a Comprehensive Zoning Plan for the township. On September 29, 1969, the Board of Supervisors adopted the recommended Comprehensive Zoning Plan, after deleting therefrom a section providing for multi-family housing. This Court on February 13, 1970, filed its decision in *Girsh Appeal*, 437 Pa. 237, 263 A.2d 395 (1970), declaring as unconstitutional a municipal zoning ordinance which failed to provide for multi-family housing. On April 11, 1970, Harcourt Wells, Inc., (William H. R. Casey's predecessor in interest to the property here involved) made an application to the Board of Supervisors by letter and submission of a preliminary plot plan to allow it to introduce multi-family development into the township. Simultaneously, the applicant questioned the validity of the township's zoning ordinance and requested a hearing before the Zoning Hearing Board.[1] The challenge to the ordinance was premised on two distinct grounds: (a) the ordinance did not provide for multi-family dwellings; and (b) the ordinance required a minimum two-acre lot for residential housing.

On April 11, 1970, the Board of Supervisors referred to the Warwick Township Planning Commission [Planning Commission] for its recommendation, the provision for multi-family housing which had been deleted from the 1969 Zoning Ordinance. On April 13, 1970, the Planning Commission recommended to the Board of Super-

---

1. The Act of July 31, 1968, P.L. 805, § 910, as amended, 53 P.S. § 10910 (1972).

visors adoption of an amendment to the 1969 Zoning Ordinance which would provide for multi-family housing within the township; however, the area wherein such housing would be permitted did not include the land of Harcourt Wells, Inc. Public notice of this proposed amendment was made on May 1 and May 8, 1970, and it was adopted on May 25th.

In the interim, on May 22, 1970, the Zoning Hearing Board began its hearings on Harcourt Wells, Inc.'s challenge to the validity of the township zoning ordinance. On June 14th, the Zoning Hearing Board issued its decision dismissing the challenge to the validity of the ordinance. However, prior to this, or on May 25, 1970, William H. R. Casey, as successor in interest to Harcourt Wells, Inc., filed an appeal in the Court of Common Pleas of Bucks County contending, inter alia, the Zoning Board was "without authority to determine questions concerning the validity of the zoning ordinance." A second appeal was also filed subsequent to the Zoning Hearing Board's issuance of its decision, but prior to the hearing before the Court of Common Pleas. These two appeals were formally consolidated for hearing before the Court of Common Pleas.

On April 16, 1972, the court filed a decision in favor of the township. It held that, although the 1969 Zoning Ordinance was unconstitutional in light of the principles enunciated in *Girsh Appeal*, the multi-family housing provision adopted on May 25, 1970, had cured the constitutional infirmity. The court also ruled that the appellant had not met the burden of proof to successfully challenge the constitutionality of the minimum lot requirement.

On appeal, the Commonwealth Court held that the multi-family housing provision did not cure the constitutional defect because it was not pending at the time the applicant filed the challenge to the validity of the ordinance. It did not reach the issue involving the minimum

lot requirement. The Commonwealth Court then directed that the building permit issue, as related before. We then granted the township permission to file this appeal.

Initially, we note we need not decide the question of whether or not one challenging the constitutionality of a municipal zoning ordinance may, under the circumstances here present, circumvent the jurisdiction of the Zoning Board and go directly to the Court of Common Pleas because the challenger here filed a second appeal in the Court of Common Pleas subsequent to the Board's decision and these two appeals were formally consolidated for hearing by the court.

■■   However, we must determine whether the proposed curative provision, adopted May 25, 1970, was "pending" at the time the appellee's predecessor in interest commenced this attack upon the validity of the zoning ordinance. If so, then the unconstitutionality of the unamended ordinance would not be relevant to our decision as our consideration would then be focused on the ordinance in its amended form. The "pending ordinance doctrine"[2] has been most carefully defined in cases involving zoning modifications vis-a-vis applications for building permits. It is well settled in this Commonwealth that a building permit may be refused if at the time of application for such permit there is pending an amendment to a previously permissive zoning ordinance which would prohibit the use of the land for which such permit is sought. *Hertrick Appeal*, 391 Pa. 148, 137 A. 2d 310 (1958); *Boron Oil Co. v. Kimple*, 445 Pa. 327, 284 A.2d 744 (1971). When there has been a "sufficient public declaration" of an intent to amend the existing zoning ordinance, it is the pending amendment which governs the issuance of such permits. *Lhormer v. Bowen*, 410 Pa. 508, 188 A.2d 747 (1963). See also *Boron*

2.   For an excellent discussion of the pending ordinance doctrine, see 50 A.L.R.3d 596, 623–632 (1973).

*Oil Co. v. Kimple,* supra. While the facts presented herein distinguish the instant case from the typical "pending ordinance" case, in that there existed no permissive zoning ordinance subsequently amended to effectively deny the application for the building permit, the same approach will be followed. If, as the township contends, there had been a "sufficient public declaration" of an intent to provide for multi-family housing in the township zoning ordinance, then the constitutionality of the ordinance must necessarily involve a consideration of the ordinance as it existed subsequent to May 25, 1970.

■ The events preceding the adoption of an ordinance must be examined whenever the issue of pendency is raised. An ordinance is pending when the governing body "has resolved to consider a particular scheme of rezoning and has advertised to the public its intention to hold public hearings on the rezoning." *Boron Oil Co. v. Kimple,* supra, 445 Pa. at 331, 284 A.2d at 747. An application of this test to the facts herein presented leads us to conclude that the amendment involved was not "pending" when this challenge was commenced.

■ Appellee's predecessor in interest commenced this challenge on April 11, 1970.[3] While the Board of Supervisors did, on the same day, propose to amend the township zoning ordinance to include a provision for multi-family housing this proposal was merely referred to the Planning Commission for consideration.[4] The formal determination to hold public hearings and advertise to the public such a determination was not made until April 13, 1970, after the Planning Commission had made its recommendations.[5] Thus, prior to April 13, 1970, it is

3. An application for review of a zoning provision initiates the challenger's attack and prevents a later ordinance from being considered as pending. Act of July 31, 1968, P.L. 805 § 910, as amended, 53 P.S. § 10910 (1972); *Boron Oil Co. v. Kimple,* supra.

4. See Minutes of Board of Supervisors Special Meeting, April 11, 1970.

5. See appellant's brief, page 11.

clear that there had been no clear resolve to "consider a particular scheme of rezoning", as the recommendations of the Planning Commission were yet to be considered. More importantly, it was not until May 1, 1970, almost three weeks after initiation of this challenge, that the Board of Supervisors publicly advertised its intention to adopt this particular provision. In view of the requirement that there be a prior public declaration of an intent to rezone, we cannot say that the township had satisfied its obligation when it had not publicly advertised its intentions prior to the filing of this challenge. Thus, we rule the amendment was not pending at the time of this challenge.

■ However, our inquiry may not end here and we must still determine whether the provisions of the Municipalities Planning Code [6] would allow the amendment to cure the constitutional defect.[7] The trial court reasoned that since Section 1009 of the M.P.C., supra, 53 P. S. § 11009 (now repealed),[8] granted the municipality an "opportunity to cure the Ordinance deficiency *after* judgment, *a fortiori* it may be given the opportunity to cure the deficiency *before* judgment."

6. The Act of July 31, 1968, P.L. 805, § 101 et seq., now amended, 53 P.S. § 10101 et seq. (1972). Our analysis must focus on the statute, as written, prior to the 1972 amendments since we are not concerned with amendments made after the application here involved was filed.

7. The validity of the lower court's decision holding Warwick Township's unamended 1969 Zoning Ordinance constitutionally infirm for its failure to provide for multi-family housing under our decision in *Girsh Appeal* is not here challenged.

8. Section 1009 provided:
   "(2) Where the appeal involves a challenge to the validity of any ordinance or map the court shall have power to declare the ordinance, map or any provision thereof invalid and, in addition thereto, shall have power to:
   (i) Enter judgment in favor of the landowner as provided in section 802, or
   (ii) Stay the effect of its judgment for a limited time to give the local governing body an opportunity to modify or amend the ordinance or map in accordance with the opinion of the court."

We cannot agree that the Legislature intended in Subsection 2(ii), supra, to allow for an interim period after a judicial determination has been made in which the municipality may remedy its infirm ordinance. To so read the legislative intent would effectively grant the municipality a power to prevent any challenger from obtaining meaningful relief after a successful attack on a zoning ordinance. The municipality could penalize the successful challenger by enacting an amendatory ordinance designed to cure the constitutional infirmity, but also designed to zone around the challenger. Faced with such an obstacle to relief, few would undertake the time and expense necessary to have a zoning ordinance declared unconstitutional.

We have previously rejected an attempt by a local governing body to zone around a successful challenger to its zoning ordinance. Following our decision in *Girsh Appeal*, the Township of Nether Providence enacted an amendatory ordinance providing for apartment uses in the township, but left the [Girsh] Duer Tract zoned R–1 Residential.[9] Nevertheless, the assignees of Mr. Girsh's rights, the Altmans, sought issuance of the building permit originally applied for. This Court, in response to a petition for enforcement of our order in *Girsh Appeal* directed the Township's Building Inspector to issue such building permit upon compliance by the petitioners with the Township Building Code.[10] In so doing, we recognized that an applicant, successful in having a zoning ordinance declared unconstitutional, should not be frustrated in his quest for relief by a retributory township. The interpretation given Subsection 2(ii) by the trial court

9. See *Willistown Township v. Chesterdale Farms, Inc.*, 7 Cmwlth. 453, 481, 300 A.2d 107 (1973); *Washburn, Apartments in the Suburbs; In re Appeal of Joseph Girsh*, 74 Dick.L.Rev. 634, 653–54 (1970).

10. Order No. MP–12,271 (August 29, 1972) enforcing *Girsh Appeal.*

would operate in derogation of this principle and must be rejected.

■■ We believe Subsection 2(ii) was an attempt by the Legislature to avoid the situation in which the municipality would be left without a valid zoning ordinance. Once a zoning ordinance is found to be constitutionally defective, the judgment invalidates the entire ordinance, not merely the zoning on a particular tract of land.[11] By staying the "effect" of its judgment for a limited time, a court can avoid the chaotic situation which would arise if the municipality remained temporarily unzoned. The municipality is given an opportunity to cure the defective ordinance in accordance with the determination of the court without fear of a flood of applications by landowners seeking to take advantage of the invalidity. The original ordinance would remain in effect and subsequent applicants would be on constructive notice of the municipality's intent to amend the defective ordinance and, therefore, would be unable to obtain vested rights based upon the ordinance's invalidity. In effect, a moratorium would be effectuated upon the challenging of the zoning ordinance and the application for building permits until an amended, constitutionally permissible ordinance could be enacted.

Since Warwick Township has already amended its zoning ordinance, the stay provided for in Subsection 2(ii) will not be necessary. Future applicants must contend with 'the amended ordinance as it is now written. However, we cannot allow a municipality to thwart a valid challenge to its zoning ordinance by adopting a curative provision, which was not considered or advertised prior to the time of the challenger's application. Therefore, we will not permit this provision for multi-family housing, enacted May 25, 1970, to deny appellee's rights.

11. This case must be distinguished from the case in which the challenger is merely contesting the zoning of his own tract of land, and only seeking to have the court declare the zoning of his tract invalid.

■ Finally, we must determine whether a court has the power to grant an applicant-challenger definitive relief upon rendering a zoning ordinance constitutionally infirm.[12] The appellee seeks a building permit for the erection of multi-family dwellings on his tract of land located in Warwick Township. This Court, pursuant to its disposition of the petition for enforcement of our order in *Girsh Appeal* has implicitly held that courts in this Commonwealth do have such power.[13] "Obviously, if judicial review of local zoning action is to result in anything more than a farce, the courts must be prepared to go beyond mere invalidation and grant definitive relief."[14] To forsake a challenger's reasonable development plans after all the time, effort and capital invested in such a challenge is grossly inequitable.

■ However, we are not justified in ordering the immediate issuance of this building permit when the right thereto is conditioned on other prior approvals which have not been given. We cannot say that the appellee is entitled to the building permit, as a matter of right, upon a successful challenge to the existing zoning ordinance. Rather, he must satisfy the requirements of the other sources of control (i. e., subdivision controls, building codes, etc.) before such permit may issue. Had appellee's predecessor in interest elected to file a complete application for development, either preliminary or final, with the appropriate agency or officer, appellee could, in accordance with Section 802 of the M.P.C.,[15] have demanded "that such agency or officer decide in

12. It should be remembered that this litigation was prior to the adoption of new Section X of the M.P.C., effective August 1, 1972.

13. Supra note 9. Also see generally, Krasnowiecki, Zoning Litigation and the New Pennsylvania Procedure, 120 U.Pa.L.Rev. 1029 (1972).

14. Krasnowiecki. Id. at 1082.

15. The Act of July 31, 1968, P.L. 805, § 802, 53 P.S. § 10802 (now repealed).

what respects the application accords with the provisions of the governing ordinance or map and in what respects it conflicts therewith . . .." These determinations would have furnished some basis for our granting the definitive relief requested.[16] Instead, the applicant filed with the Board of Supervisors only a preliminary plot plan and a summary sheet showing the proposed development. No demand was made upon the appropriate agency or officer for a determination as to the respects in which the submitted plan was in accordance with the provisions of the governing ordinance. While such demands may have been futile, in view of the total absence of a provision for multi-family housing, we feel that such demands were necessary in order to allow the other sources of control an opportunity to pass on the merits of the application.

In order to give these other sources of control an opportunity to approve the building permit application or to state their reasons for opposing the grant of such permit, we are hereby remanding the record to the Zoning Hearing Board. We direct that the building permits applied for be issued upon compliance by appellee with all administrative requirements of the zoning ordinance in effect on the date of the original application which are not inconsistent with this opinion. We further direct that the trial court shall retain jurisdiction over this matter to ensure the rights of the appellee as mandated by this opinion.[17]

The order of the Commonwealth Court is vacated and the record is remanded to the Zoning Hearing Board of Warwick Township for further proceedings consistent with this opinion.

It is so ordered.

16. The Act of July 31, 1968, P.L. 805, § 1009(2), 53 P.S. § 11009(2) (now repealed).

17. In view of our disposition, we need not decide the question pertaining to the minimum lot size requirement.

POMEROY, J., concurs in the result.

JONES, C. J., filed a dissenting opinion.

JONES, Chief Justice (dissenting).

It has been my belief that one of the prime purposes of enacting the Municipalities Planning Code (Act of July 31, 1968, P.L. 805, § 101 et seq., now amended, 53 P.S. § 10101 et seq. (1972)) was to allow a municipality to comply with the law by amending its zoning ordinance to correct any deficiencies without "the pain of suffering unwanted uses sought by those seeking advantage of the latest judicially discovered imperfection." *Colonial Park for Mobile Homes, Inc. v. Zoning Hearing Board,* 5 Pa. Cmwlth. 594, 602, 290 A.2d 719, 723 (1972).[1]

Further, I do not believe our decision in *Girsh Appeal,* 437 Pa. 237, 263 A.2d 395 (1970), holds otherwise.[2]

1. *See* Section 802 of the Municipalities Planning Code, as amended, 53 P.S. § 10802 (now repealed, 1972, June 2, P.L. 333 No. 93, § 13). In particular, this section provided that a township, upon being given notice by a landowner of his administrative and/or judicial challenge, had sixty days to amend the challenged provisions. Further, if such township cured the defect within the designated time period, the landowner was told he could either dismiss his former complaint or challenge the amended ordinance. Interestingly, although this landowner did not proceed pursuant to Section 802, the Warwick Township governing body on its own initiative cured its zoning ordinance well within the sixty days deemed reasonable by statute. Further, the only real differences between proceeding via Section 802 and as this appellant did (pursuant to Section 801) is that this landowner did not file the more detailed plans and drawings required by a complete application for development under Section 802(1) and that the Township Board of Supervisors was not specifically notified of appellant's challenge pursuant to Section 801. Such differences, however, did not militate that the lower court not consider the curative amendment that had been adopted prior to the time appellant's challenge reached that court. In fact, in view of the incomplete nature of appellant's application at the time of challenge, the Common Pleas judge held that a building permit should not be granted. Lastly, it should be noted that the majority's interpretation of Sections 801 and 1009(2)ii rendered nugatory the more elaborate proceedings cited in Section 802—a result the legislature could not have intended.

2. In *Girsh,* we held that the Township's zoning ordinance was unconstitutional to the extent that it did not provide for apart-

Rather, until today, I believe a lower court could consider the prompt, good faith efforts of a township to bring its zoning ordinance into compliance with the unconstitutionality cited in *Girsh* [3] and, where such a good faith amendment was adopted prior to court proceedings, the trial court would be permitted to dismiss the challenging landowner's complaint. Although the majority refers to the affirmative relief granted in *Girsh* as mandating similar relief here, it must be noted that in *Girsh* the "curative" amendment was adopted over three and a half months after this Court's decision and more than a year after the landowner's initial challenge. Furthermore, when this Court decided to grant specific relief to the landowner in *Girsh* (Order dated August 29, 1972), the issue was whether a township could in "bad faith" zone around the challenging landowner. The issue of bad faith was not presented here.

I believe the trial court properly viewed this Township as promptly and reasonably curing its zoning ordinance in light of our *Girsh* decision. To hold in the circumstances presented here that withholding a building permit from Mr. Casey would chill future zoning challenges is an exaggeration. For even in the event that a successful challenger did not personally benefit by a curative amendment, under my reading of *Girsh* the landowner could still seek relief where he could show the township's action was retaliatory.

ments, not that the particular appellant had a vested right to build apartments on his particular ground. *See Girsh Appeal, supra,* 437 Pa. at 246 n. 6, 263 A.2d at 399 n. 6.

3. Here, the Township began amending its zoning ordinance to comply with *Girsh* within two months of that decision, the curative amendment being adopted quickly thereafter.