Board of Supervisors of Willistown Township, Appellant, *v.* Edward J. Walsh, Jr. and William J. Curley, Jr., Appellees.

Thomas A. J. McInerney, Noel McInerney and Board of Supervisors of Willistown Township, Appellants, *v.* Edward J. Walsh, Jr. and William J. Curley, Jr., Appellees.

Argued March 31, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., ROGERS and BLATT. Judge MENCER did not participate.

*Robert J. Shenkin,* with him *John O. Platt, Jr.,* and *MacElree, Platt, Harvey & Gallagher, Ltd.,* for appellant.

*Thomas A. Riley, Jr.,* with him *John C. Snyder* and *Lentz, Riley, Cantor, Kilgore & Massey, Ltd.,* for intervening appellants.

*John P. Trevaskis, Jr.,* with him *Holbrook M. Bunting, Jr.,* and *Trevaskis, Doyle, Currie, Nolan and Bunting,* and, of counsel, *Jan Krasnowiecki,* for appellees.

Opinion of Judge CRUMLISH, JR., July 16, 1975:

The Board of Supervisors of Willistown Township (Board of Supervisors) has appealed an order of the Court of Common Pleas of Chester County which directed the issuance of building permits to Edward J. Walsh, Jr. and William J. Curley (Walsh and Curley) to construct multi-family dwellings after they file appropriate plans.

As is so often the case in zoning appeals, the factual posture is complex and so we believe it to be appropriate to recite the sequence.

Walsh and Curley are the owners of 65.6 acres in Willistown Township, Chester County, on the north side of U. S. Route 202, east of Township Line Road. The property was purchased on August 11, 1967, and since

then has at all times been located within an RA residential district. The district provides for single family detached homes on minimum two acre lots.

Application for building permits was made by Walsh and Curley on June 27, 1968. The envisioned subdivision provided for twenty-six lots which constituted the maximum permissible by the ordinance. On October 17, 1968, the developers were informed by the County Health Department that approximately 70% of the lots were, or could be, unsuitable because of sewage disposal problems in the area. Walsh and Curley in April of 1969 then engaged an engineer who concluded that the twenty-six homes allowable, alone, could not support the cost of a sewage treatment facility. Further, the record reveals that the Supervisors do not now, nor in the foreseeable future, contemplate construction of a treatment facility in the area. The developers then engaged another civil engineer whose opinion suggested that a variety of residential housing, in combination with open space, would support the necessary treatment facility.[1]

By letter on March 23, 1970, Walsh and Curley submitted to the Board of Supervisors a plan reflective of that proposed by their engineer, together with a proposed amendment to the Township zoning ordinance which would create a district to meet their proposal. Pursuant to Sections 801 and 802 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, §§801, 802, *as amended,* 53 P.S. §§10801, 10802, Walsh and Curley intended this application to be treated as an application for development under those sections and the relevant sections of the Township zoning ordinance.[2]

---

1. The units would consist of 30 townhouses, 310 two-bedroom apartments, and 280 single bedroom apartments with no more than 10 units to a building. Further, this plan seems to conform to other permissible densities in the area.

2. Sections 200(n), (b) and 400 are the relevant sections of the ordinance.

At the time of submission of the application, the controlling zoning ordinance had no provisions for apartments. Single family detached homes were the sole permitted housing use. However, the subdivision control ordinance in effect, specifically considered multiple dwellings use.

The Board of Supervisors on July 3, 1970, heard this proposal, and declined to adopt the proposed amendment. The record is devoid of reference to any deficiencies of the plan as submitted, required by Section 802 of the MPC, 53 P.S. §10802.

Walsh and Curley then appealed to the Court of Common Pleas of Chester County on July 31, 1970.[3] On August 25, 1970, the Township amended its zoning ordinance. The relevant portions of that amendment[4] were that:

1) a new Article, providing for an Office-Apartment District (O-A) was added; and

2) the zoning map was amended to re-zone two areas in the northeast portion of the new O-A district.[5] We note that the Walsh and Curley tract was not within this rezoned area.

During the pendency of this appeal below, the Court of Common Pleas found the August 25, 1970, O-A amendment unconstitutional, *i.e.*, exclusionary, *In Re Appeal of Chesterdale Farms, Inc.,* C. P. Chester County, No.

---

3. The notice of appeal to the Township stated that the developers sought to secure relief authorized by Section 802(2) and 1009 of the MPC and cited provisions of the Code allowing the Township sixty days to amend the challenged provisions of the ordinance.

4. The amendment also restated the objectives and purposes of the ordinance.

5. There were two rezoned parcels. One was owned by a Scottsdale, the other by the Sisters and Servants of the Immaculate Heart of Mary. The former had been zoned industrial, while the latter was used for educational and religious activity.

148, March, 1971, and later this Court affirmed, *Willistown Township v. Chesterdale Farms, Inc.*, 7 Pa. Commonwealth Ct. 453, 300 A.2d 107 (1973). Presently, this issue is before our Supreme Court.

On June 23, 1972, the Chester County court ordered the appeal dismissed without prejudice, but it allowed Walsh and Curley to file a "proper application" with the appropriate township office or agency pursuant to Section 801 of the MPC, 53 P.S. §10801, and ordered a hearing be held and findings of fact made.

Walsh and Curley again submitted an application for amendment to the zoning ordinance and map. This application was, for all practical purposes, a refiling of their initial application. Hearings were held by the Board of Supervisors and an opinion issued which contained the extensive findings sought by the Court. The Board concluded that the zoning ordinance was valid and constitutional, and denied the application to amend the zoning ordinance.

Walsh and Curley gave notice and statement of a zoning appeal from the Supervisors' findings, whereupon Thomas and Noel McInerney's petition to intervene was allowed by stipulation. They sought a remand of the record for submission of evidence to demonstrate that a regional sewage treatment facility might, in the future, service a single family housing use on the Walsh-Curley tract.[6]

There were two issues before the court below:

1) What are the time restrictions on the application (the original or amended application), and

2) Was the requested amendment reasonable in the circumstances?

First, we consider the effective date of the application.

---

6. In that we affirm the decision of the Court of Common Pleas below, and hold the ordinance in question constitutionally infirm, of necessity, we must reject a remand of the record.

Walsh and Curley argue that the original application, made in 1970, should be determinative since no final order was entered by the lower court in its initial opinion; and that the conditional dismissal without prejudice was essentially a remand of the record to allow evidence and findings of fact. The Township, on the other hand, urges us to find that the application should be reviewed in light of the facts as they existed in November of 1972, which was the date of the reapplication arguing that the first order of the Court terminated the initial application. We agree with the lower court in accepting the Walsh-Curley argument. We here are dealing with one proceeding, not two distinct applications. This being so, we view the facts as they existed in March 1970, and we shall view the unamended ordinance as it existed at that time, *i.e.,* unamended.

Recently, a similar factual situation confronted us. *See Casey v. Zoning Hearing Board of Warwick Township*, 8 Pa. Commonwealth Ct. 473, 303 A.2d 535 (1973), *aff'd*    Pa.    , 328 A.2d 464 (1974), where, following a challenge by a landowner when no amendment of a curative nature was pending, and prior to determination of that challenge, the Township attempted to cure the defect by amending its ordinance. Our Supreme Court in *Casey* clearly invalidated that process.

Therefore, viewing the unamended ordinance as we must, it cannot withstand the constitutional rigors of *Girsh Appeal*, 437 Pa. 237, 263 A.2d 395 (1970), since there was no provision for multi-housing in the ordinance. But, even assuming arguendo, that we had accepted the Township's argument that the reapplication should be viewed as controlling, thereby making the amended ordinance the focus of our attention, we would be unable to sanction any holding which visited constitutionality upon the amended ordinance, as we have previously determined that this ordinance, both prior to and after amendment, was unconstitutional in its at-

tempted exclusion of multi-family units. *See Willistown Township v. Chesterdale Farms, Inc., supra.*

Lastly, we must determine if the granting of affirmative relief in the form of a building permit, with the limitation that appropriate plans be filed, was warranted upon a rendering of the ordinance constitutionally infirm.[7]

In *Casey,* the Supreme Court held that the courts of this Commonwealth do have that power, observing that to forsake a challenger relief after all the time, money and capital investment would, indeed, be inequitable.[8] That Court said that the right to a permit is not absolute, however:

"However, we are not justified in ordering the immediate issuance of this building permit when the right thereto is conditioned on other prior approvals which have not been given. We cannot say that the appellee is entitled to the building permit, as a matter of right, upon a successful challenge to the existing zoning ordinance. Rather, he must satisfy the requirements of the other sources of control (i.e., subdivision controls, building codes, etc.) before such permit may issue. Had appellee's predecessor in interest elected to file a complete application for development, either preliminary or final, with the appropriate agency or officer, appellee could, in accordance with Section 802 of the MPC, have demanded 'that such agency or officer decide in what respects the application accords with the provisions of the governing ordinance or map and in what respects it conflicts therewith. . . .' These determinations would

---

7. As stated in *Casey, supra,* where this precise question arose, it should be remembered that this litigation was prior to the adoption of new Article X of the MPC effective August 1, 1972.

8. This rationale in *Casey* was taken from Krasnowiecki, *Zoning Litigation and the New Pennsylvania Procedure,* 120 U. Pa. L. Rev. 1029 (1972).

have furnished some basis for our granting the definitive relief requested. Instead, the applicant filed with the Board of Supervisors only a preliminary plot plan and a summary sheet showing the proposed development. No demand was made upon the appropriate agency or officer for a determination as to the respects in which the submitted plan was in accordance with the provisions of the governing ordinance. While such demands may have been futile, in view of the total absence of a provision for multi-family housing, we feel that such demands were necessary in order to allow the other sources of control an opportunity to pass on the merits of the application.

"In order to give these other sources of control an opportunity to approve the building permit application or to state their reasons for opposing the grant of such permit, we are hereby remanding the record to the Zoning Hearing Board. We direct that the building permits applied for be issued upon compliance by appellee with all administrative requirements of the zoning ordinance in effect on the date of the application which are not inconsistent with this opinion." *Casey, supra,*      Pa. at      , 328 A.2d at 469-70.

The lower court, when it issued its order, complied with *Casey*, for as we have said before, the issue of these permits is conditioned upon the submission of appropriate plans to the appropriate township offices or agencies for review.

Consistent with the foregoing, the order of the Court of Common Pleas of Chester County is affirmed.

Judge ROGERS concurs in the result.