341 A.2d 466

**TOWNSHIP OF WILLISTOWN**

v.

**CHESTERDALE FARMS, INC., Appellant.**

**TOWNSHIP OF WILLISTOWN, Appellant,**

v.

**CHESTERDALE FARMS, INC.**

Supreme Court of Pennsylvania.

Argued Jan. 14, 1974.

Decided July 18, 1975.

446

Lawrence E. Wood, Wood, Parke & Barnes, West Chester, for appellant at No. 438 and appellee at No. 439.

Robert J. Shenkin, MacElree, Platt & Harvey, Paoli, for appellant at No. 439 and appellee at No. 438.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

In May of 1969, Chesterdale Farms, Inc. (Chesterdale), proposed to erect apartments on a tract of land located in Willistown Township (the township). This proposal was rejected because the tract was zoned RA–1, Residential, which did not permit apartments. Some six months later, Chesterdale again submitted a plan for approval, but it, too, was refused. Chesterdale then applied for a building permit, which was refused. Shortly after that refusal, this court decided *Girsh Appeal,* 437 Pa. 237, 263 A.2d 395 (1970), in which we held zoning that totally excluded apartments to be unconstitutional. Subsequent to our decision in *Girsch, supra,* Chesterdale again applied for a building permit and, in addition, filed an action in mandamus, alleging that the township's zoning ordinance was unconstitutional in light of *Girsh,* and further alleging that it was entitled to a building permit as a matter of right.[1] The township thereupon passed a new zoning ordinance which provided an area of eighty acres in the township on which apartments could be built. Chesterdale's land was not in that area.

Chesterdale's application for the building permit was first refused because the new ordinance was pending. Chesterdale then appealed to the zoning hearing board and, after the new ordinance was passed, Chesterdale's request for a permit was denied by the zoning board. Chesterdale appealed to the Court of Common Pleas of Chester County, which upheld the board's decision refusing the permit, but declared the new zoning ordinance to be unconstitutional. Both Chesterdale and the township then appealed to the Commonwealth Court, which, being equally divided, affirmed the decision of the Court of Common Pleas. Both parties then sought allocatur,

---

1. The action in mandamus is still pending.

Chesterdale seeking to have its permit issued and the township alleging that its new ordinance was constitutional. We granted allocatur because of the importance of the issues involved.

*No. 439 January Term, 1973–Appeal of Township of Willistown*

Appellant (Willistown Township, argues that the August 25, 1970, amendment of its zoning ordinance, which provided for an eighty acre site for apartment-type dwellings, met this court's mandate in *Girsh, supra,* and therefore, the zoning ordinance is constitutional. Appellee, Chesterdale, contends that the rezoning of only 80 acres out of 11,589 acres in the township constitutes "tokenism," and is an exclusionary land use restriction not meeting the *Girsh* standard. We agree with appellee, Chesterdale.

In *Girsh, supra,* this court, in declaring unconstitutional a total exclusion of apartments from a zoning ordinance, except for a variance procedure, stated:

". . . To be constitutionally sustained, appellee's land-use restriction must be reasonable. If the failure to make allowance in the Township's zoning plan for apartment uses is unreasonable, that restriction does not become any the more reasonable because once in a while, a developer may be able to show the hardship necessary to sustain a petition for a variance. . . ." At page 240, 263 A.2d at page 397.

The rationale supporting our *Girsh* decision is taken from *Nat. Land & I. Co. v. Easttown Twp. Bd. of A.,* 419 Pa. 504, 532, 215 A.2d 597, 612 (1965), wherein we stated:

". . . A zoning ordinance whose *primary purpose* is to prevent the entrance of newcomers in order to avoid future burdens, economic and otherwise, upon the administration of public services and facilities can not be held valid." (Emphasis supplied.)

Moreover, the prevention of "newcomers" is not limited to total exclusion, but also selective admission. This court, in *Concord Township Appeal*, 439 Pa. 466, 268 A. 2d 765 (1970), discussed the responsibilities of municipalities on the fringe of an urban area in dealing with expansive population pressures, and stated:

"The implication of our decision in National Land [419 Pa. 504, 215 A.2d 597 (1965)] is that communities must deal with the problems of population growth. They may not refuse to confront the future by adopting zoning regulations that effectively restrict population to near present levels. . . . It is not for any given township to say who may or may not live within its confines, while disregarding the interests of the entire area." At page 474, 268 A.2d at pages 768–769.

The New Jersey Supreme Court, in *Southern Burlington County NAACP v. Twp. of Mount Laurel*, 67 N.J. 151, 336 A.2d 713 (1975), in discussing a zoning ordinance which provided for a total exclusion of apartment dwellings, stated:

"We conclude that every such municipality must, by its land use regulations, presumptively make realistically possible an appropriate variety and choice of housing. *More specifically, presumptively it cannot foreclose the opportunity of the classes of people mentioned for low and moderate income housing and its regulations must affirmatively afford that opportunity, at least to the extent of the municipality's fair share of the present and prospective regional need therefor.* These obligations must be met unless the particular municipality can sustain the heavy burden of demonstrating peculiar circumstances which dictate that it should not be required so to do." (Page 724 of 336 A.2d.) (Emphasis supplied.)

Our review of this record convinces us that the township zoning ordinance which provides for apartment con-

struction in only 80 acres out of a total of 11,589 acres in the township continues to be "exclusionary" in that it does not provide for a fair share of the township acreage for apartment construction.

Nor are we convinced by Willistown's argument that Chesterdale's development plans would overburden its municipal services. Suburban municipalities within the area of urban outpour must meet the problems of population expansion into its borders by increasing municipal services, and not by the practice of exclusionary zoning. See *National Land, supra,* and *Concord Twp., Appeal, supra.*

Having found the township's zoning ordinance unconstitutional, we direct that zoning approval for appellee's tract of land be granted and that a building permit be issued given appellee's compliance with the administrative requirements of the zoning ordinance and other reasonable controls, including building, subdivision and sewage regulations, which are consistent with this opinion. See *Casey v. Zoning Hearing Board of Warwick Twp.,* 459 Pa. 219, 328 A.2d 464 (1974). The trial court shall retain jurisdiction to oversee the granting of the necessary permits authorized by this opinion.

Order of the Court of Common Pleas affirmed in part and modified in part. Case remanded to the Willistown Township Zoning Hearing Board for proceedings consistent with this opinion.[2] Appellant in Appeal No. 439 January Term, 1973 to bear costs.

JONES, C. J., did not participate in the consideration or decision of this case.

ROBERTS, J., filed a concurring opinion.

2. Given our decision in Appeal of Willistown Township, No. 439 January Term, 1973, we need not reach the issue as to whether the variance was or was not properly denied in Appeal of Chesterdale, No. 438 January Term, 1973 is dismissed.

MANDERINO, J., concurs in the result.

POMEROY, J., filed a dissenting opinion.

POMEROY, Justice dissenting.

I respectfully dissent.

The 1970 Census showed Willistown Township, a rural community, to have a population of only 9,128 persons living in 2570 dwelling units. On August 25, 1970, the Township's zoning ordinance was amended to provide apartments in an area containing some 80 acres.[1] Under the terms of the amended ordinance, it is possible that 800 to 1040 apartments may be constructed on land so zoned, the number depending upon whether or not the buildings have elevators.[2] The Township thus made provision for the potential addition to its population of apartment dwellers numbering roughly 1600 to 3120 persons,[3] the latter figure being over one-third of the population at the time of the adoption of the amended ordinance.

The Court strikes down this ordinance as "exclusionary" because it "does not provide for a fair share of the township acreage for apartment construction." (Opinion of the Court, *supra* at 468). The opinion does not state why the share is not "fair", does not vouchsafe

1. Not all of the acreage was to be immediately available for apartment construction due to ownership of a tract of land by Villa Maria Academy. The record shows that some of this tract has since been sold to a hospital. See *Willistown Township v. Chesterdale Farms, Inc.,* 7 Pa.Cmwlth. 453, 300 A.2d 107 (1973) (Opinion in Support of Affirmance, at pp. 474–76, 300 A.2d 107).

2. Section 1009(2) of the Township zoning ordinance provides as follows: "*Density.* There shall be sufficient lot area to provide a density of not more than ten (10) dwelling units or thirty (30) habitable rooms per acre, whichever constraint may be the more binding, except that either constraint may be increased to thirteen (13) dwelling units or thirty-nine habitable rooms in buildings served by elevators."

3. The spread represents an estimated average of 2 persons per each of 800 apartments to an average of 3 persons per each of 1040 apartments.

what might be considered a "fair share," and does not indicate any criteria by which a fair share may be ascertained. It may be conceded that 80 acres is a relatively small portion of the total township area comprising 11,589 acres, but it is at least a beginning. The record may be searched in vain for any evidence of a purpose to exclude apartments permanently from other portions of the municipality.[4] To the contrary, a township supervisor testified that the 1970 rezoning was only a first step in providing for apartments in an orderly fashion consistent with the overall county plans for redevelopment, and that as the community continues to grow and other facilities are constructed, other land proximate to such facilities will be similarly rezoned for apartments.

I see no justification for the Court on this record to label the Township's approach as mere "tokenism" (Opinion of the Court, *ante* at 467) or to reject the new ordinance as constituting "prevention of 'newcomers'" by "selective admission" (*ibid*). This Court has eschewed the role of "super board of adjustment" or "planning

4. The minutes of the meeting of the Board of Supervisors of Willistown Township held on August 27, 1970, the day the amendatory ordinance was adopted, indicate to me a bona fide undertaking to bring the Township zoning structure into harmony with the Court's decision in *Girsh Appeal,* 437 Pa. 237, 263 A.2d 395 (1970). The following is an excerpt from those minutes:

"Mr. Reitman, on behalf of the planning commission, then read a letter dated August 25, 1970, from the commission to the board of supervisors describing the long and intensive study and investigation of the planning commission which led to the amendments under consideration, explaining the views of the planning commission on such amendments and recommending passage of the ordinance.

"Mr. Ewing then read from the opinion of the Pennsylvania Supreme Court in *Girsh v. Nether Providence Township,* observing that the language of that case obliged all townships with a demand for apartments to provide for them. Failure to act, he noted, would only increase the risk that builders could obtain court approval for apartments in areas of their selection. It was therefore important that the township act responsibly to provide a reasonable area for apartment use consistent with the orderly development of the township and furnishing of necessary township services."

commission of last resort"; the zoning power, we have said, is a tool of government which, to be effective, "must not be subjected to judicial interference unless clearly necessary." *National Land and Investment Company v. Easttown Township Board of Adjustment*, 419 Pa. 504, 521, 215 A.2d 597, 607 (1965). No clear necessity is shown for the interference to which the Court, by its decision today, subjects this first step of Willistown Township in its redevelopment undertaking. See *Concord Township Appeal*, 439 Pa. 466, 481, 493, 268 A.2d 765 (1970) (dissenting opinion of Mr. Justice, now Mr. Chief Justice, Jones, joined by Mr. Justice Cohen; dissenting opinion of Mr. Justice Pomeroy, joined by Mr. Justice, now Mr. Chief Justice, Jones).

My view of the case is well summarized in the opinion of Judge Wilkinson, joined by President Judge Bowman and Judge Blatt, writing in the Commonwealth Court in support of the validity of the ordinance:

> "The sole question here is whether the Township Supervisors, in the proper discharge of their duties, after due consideration and proper inquiry and advice, have reasonably provided for apartments in an appropriate sector of the Township. The extensive record in this case, including the detailed opinion filed by the Zoning Board, supports the decision that the Township officials, after considerable study, including recommendations of county and regional planning bodies, amended its zoning ordinance to permit apartments in an area it found best suited therefor, near the existing population center, convenient to transportation, schools and municipal services, and in keeping with the plans for the long-range development of the Township, but flexible enough to reflect continuing study and adjustment to need."

*Willistown Township v. Chesterdale Farms, Inc.*, 7 Pa. Cmwlth. 453, 486, 300 A.2d 107, 124 (1973). To strike down this effort as unconstitutional merely because the

acreage set aside for apartments seems to the Court to be too small runs counter to our oft-repeated holdings that a presumption of validity attaches to a zoning ordinance, and that the burden to prove invalidity is upon the one who challenges it. *National Land and Investment Company v. Easttown Township Board of Adjustment, supra,* 419 Pa. at 522, 215 A.2d at 607. The instant challenger, in my view, has not met the burden.

ROBERTS, Justice (concurring).

I agree that the ordinance involved here is unconstitutional and that appellee is entitled to a building permit upon compliance with "all administrative requirements [e. g. subdivision controls, building codes, etc.] of the zoning ordinance in effect on the date of the original application" which are not unconstitutional. *Casey v. Zoning Hearing Board,* 459 Pa. 219, 230, 328 A.2d 464, 469–70 (1974). An extensive and detailed statement of the compelling reasons for this result is contained in the opinion in support of affirmance by Judge Mencer (joined by Judges Crumlish and Kramer) in the Commonwealth Court. *Willistown Township v. Chesterdale Farms, Inc.,* 7 Pa.Cmwlth. 453, 456, 300 A.2d 107, 109 (1973).