Appeal of Kasorex, a Partnership, from the decision of the Board of Supervisors of Montgomery Township. Board of Supervisors of Montgomery Township, Appellant.

Argued June 10, 1982, before Judges BLATT, WILLIAMS, JR. and CRAIG, sitting as a panel of three. Reargued October 5, 1982, before President Judge CRUMLISH, JR. and Judges ROGERS, BLATT, WILLIAMS, JR., CRAIG, MACPHAIL and DOYLE.

194

*William R. Cooper,* with him, *Emory W. Buck, Cooper & Greenleaf,* for appellant.

*Jules Pearlstine,* with him *Ronald E. Robinson, Pearlstine, Salkin, Hardiman and Robinson,* for appellee.

*Thomas L. Wenger,* with him *Thomas W. Bergen, Wix, Wenger & Weidner,* for Amicus Curiae, Pennsylvania State Association of Township Supervisors.

OPINION BY JUDGE CRAIG, December 1, 1982:

When the courts have held a municipality's zoning ordinance invalid because it has unlawfully excluded one class of residential use, does that decision nullify the entire zoning ordinance, leaving the municipality wholly without zoning, so that all other kinds of residential, commercial or industrial development (not involved in the exclusionary zoning holding) may proceed free of all zoning regulations?

Can the municipality cure the invalidity by adopting zoning ordinance amendments or only by proceeding to reenact its zoning in its entirety over the entire municipality?

As will be seen, these are questions of first impression.[1]

These issues arise in this case because Kasorex, a development partnership, claims the right to build a substantial number of quadruplex dwellings and twin homes on 366 acres in Montgomery Township, Montgomery County, on the basis that all zoning in that township was wiped out by *McKee v. Township of Montgomery*, 26 Pa. Commonwealth Ct. 487, 364 A.2d 775 (1976), affirming a common pleas order holding the Montgomery Township Zoning Ordinance unconstitutional and null and void "as it pertains to the exclusion of mobilehome parks." Although the township, after the *McKee* decision, adopted zoning amendments making express provision for the allowance of mobilehome parks, Kasorex contends that no amendment, no matter how comprehensive, could restore legally effective zoning in the township, but that only the preparation and enactment of a zoning ordinance anew, under Sections 607 and 608 of the Pennsylvania Municipalities Planning Code (MPC),[2] could do so, and that, until such action is taken,

---

[1] As Mr. Ryan correctly commented, before the issuance of the common pleas court decision in this case,

> [n]o court has yet said that an ordinance which is found to be exclusionary is totally void. For example, no court has held that a zoning ordinance which is invalid because it improperly excludes apartment houses permits an owner to place a gasoline station in any location which he selects.

Ryan, Pennsylvania Zoning Law and Practice, §3.5.15 (Supp. 1979).

[2] Act of July 31, 1968, P.L. 805, *as amended*, §§607, 608, 53 P.S. §§10607, 10608.

Kasorex's multiple dwellings are subject to no zoning regulations.[3]

After the Montgomery Township supervisors refused to grant subdivision approval to Kasorex for its multiple dwellings, Kasorex appealed from that refusal to the Court of Common Pleas of Montgomery County, *not* upon the ground that the Montgomery Township zoning was exclusionary as to its proposed multiple dwellings, but upon the ground that the Montgomery Township Zoning Ordinance did not exist. The common pleas court agreed and ordered the issuance of the requested development approval.

As essential background, we quote the common pleas court order affirmed by this court in the *McKee* case, which read as follows:

> AND NOW, this 25th day of July, 1975, . . . the court finds the Montgomery Township Zoning Ordinance of 1952, as amended, to be unconstitutional and, thus, null and void *as it pertains to the exclusion of mobilehome parks.* It is directed that a building permit as to a mobilehome park be issued the appellants as to the property in question . . . when and if they are in full compliance with all other valid ordinances and regulations of the township and with all other applicable laws of the Commonwealth of Pennsylvania with regard to the proposed development of a mobilehome park. . . . (Emphasis supplied.)

On its face, this court order was inconclusive as to the point in question. Although the statement that the

---

[3] Of course, Kasorex's theory, that no zoning at all exists because of the absence of formal reenactment, would support a right to develop any use—an industrial foundry or a commercial warehouse, for example—anywhere in the community's residential or other neighborhoods, subject only to the building (safety and fire) code, if any, and to subdivision regulations, if applicable.

mobilehome park development would remain subject to "all other valid ordinances and regulations" could be read as indicating no need to comply with any other elements of the *zoning* ordinance, the order also clearly found the zoning ordinance to be unconstitutional and void "as it pertains to the exclusion of mobilehome parks," thus not referring to the ordinance in its entirety.

Our court's order affirmed the common pleas order without restatement, although we pointed out that a township amendment adopted during the *McKee* litigation, which eliminated an express prohibition of "house trailer" uses, was inapplicable because of the pending ordinance rule, thus expressly resting our decision upon the original explicit prohibition of "house trailer" uses, although the common pleas court, accepting the intervening amendment, had found the ordinance invalid because of its failure—after the amendment—to make affirmative provision for mobilehome parks.

After the *McKee* decision, Montgomery Township, in addition to adding mobilehome park regulations to its subdivision ordinance, revised its zoning ordinance with four amendments which created a new mobilehome park district, rezoned some eighty-seven acres to that classification from R-1 Residential, and made further mobilehome regulation changes and rezoned additional land.[4]

---

[4] Following our *McKee* decision in 1976, this court, as well as the common pleas court, continued to deal with litigation arising thereafter under the Montgomery Township Zoning Ordinance as if it were in existence. *See Gilbert v. Montgomery Township Zoning Hearing Board*, 58 Pa. Commonwealth Ct. 296, 427 A.2d 776 (1981); *C.L. Associates v. Board of Supervisors of Montgomery Township*, 51 Pa. Commonwealth Ct. 627, 415 A.2d 134 (1980). However, it must be noted, none of those litigants raised any issue as to nonexistence of the zoning ordinance.

Undoubtedly, a municipality with a defective ordinance "runs the risk" that a successful challenger will be allowed to proceed, perhaps with a development quite contrary to the municipality's plan. *Ellick v. Board of Supervisors of Worcester Township*, 17 Pa. Commonwealth Ct. 404, 417, 333 A.2d 239, 247 (1975). The incentive necessary to raise worthy constitutional challenges cannot be thwarted. *Casey v. Zoning Hearing Board of Warwick Township*, 459 Pa. 219, 228-9, 328 A.2d 464, 468 (1974).

However, where a defeating of a challenger's incentive is not involved, it is difficult to perceive a rational basis for insisting that a lawful reform cannot be achieved even by a very comprehensive amendment, but that the municipality must start from ground zero in developing a reenactment of its entire zoning ordinance, including the industrial and commercial district provisions which may or may not have had a relationship to the residential exclusion.

Under the MPC, there is little procedural difference between the enactment of an original zoning ordinance under Sections 606-608, 610 and 611[5] and the enactment of a zoning ordinance amendment under Sections 607, 610 and 611.[6] In both cases, the municipal governing body must hold at least one public hearing pursuant to advertised public notice, (which, in either case, may employ a summary of the bill along with a cross-reference to where it may be examined), recommendations must be obtained from the county planning agency, if any, and from the local planning agency, which, in the case of an original bill, must also hold its own public hearing. Publication after enactment, in either case, may describe

[5] 53 P.S. §§10606-10608, 10610, 10611.
[6] 53 P.S. §§10607, 10610, 10611.

the ordinance or amendment by cross-reference to a location where it may be examined.

Thus the significant difference between the developer's claim as to the total nullification of an exclusionary ordinance and the municipality's severability position is that total nullification would mean that *the entire municipality would be left unzoned* during the reformation process. Reenactment necessarily requires an absolute—realistically unattainable —minimum of forty-four days for the notice periods alone[7] (the figure assumes no time whatsoever to be given to studying the content of the proposed new zoning code) and a maximum period of approximately five months,[8] not counting advance study.

Why cannot the study of the needed reform—assuming that it has impact upon every corner of the zoning map—be just as careful when the process is labeled an amendment as when it is captioned as a reenactment?

Indeed, with an amendment, the community study can take the time to plumb reasonable depths because, although development proposals within the excluded class may be able to get in under the wire by virtue of the pending ordinance rule, *Lhormer v. Bowen,* 410 Pa. 508, 188 A.2d 747 (1963), until public notice can cause the proposal to be truly "pending," *Boron Oil v. Kimple,* 445 Pa. 327, 284 A.2d 744 (1971), the rest of the municipality remains protected during

---

[7] Under MPC §§607 and 608, the public notice periods preceding the planning agency and governing body hearings must each be at least fourteen days, in accordance with Sections 610 and 107(18); the second of those fortnights may be subsumed within the thirty-day study period allowed to the county planning agency under Section 607.

[8] The two pre-hearing notice periods may each be as long as thirty days, and the governing body may defer its vote not more than ninety days beyond its hearing.

the deliberation period by land-use controls as to which the courts have found no fault.

But if we declare that all zoning is stripped away by an exclusionary zoning court decision, so that the municipality is left open to the possibility of development rapine for at least several months, we can be equally certain that the legislative course of a re-enactment during that vulnerable period will be pursued just as hastily as possible.

We cannot wish, by judicial technicality, to assure ill-considered reenactments. We certainly cannot wish to punish a municipality by adopting the doctrine proposed by the developer here. The punishment would fall, not primarily upon the officials who devised or condoned the condemned exclusion, but upon the entire community's citizens, culpable and innocent alike, by leaving their neighborhoods open to all manner of industrial and commercial development proposals (use types normally not regulated by a subdivision ordinance), subject only perhaps to a building code, and conceived in even greater haste than the feverish pace which a nullification doctrine would impose upon the town planners.

But it is here urged that we should be untroubled by such concerns—that consideration of the precise question presented here, never raised in a Pennsylvania appellate court before, is precluded because of the statement in *Casey v. Zoning Hearing Board of Warwick Township*, 459 Pa. 219, 229, 328 A.2d 464, 468 (1974) that:

> Once a zoning ordinance is found to be constitutionally defective, the judgment invalidates the entire ordinance, not merely the zoning on a particular tract of land.

Let us examine the *Casey* decision and the actual context of that quotation. Logically, it was dictum

because *Casey* did not involve a case in which a developer was claiming that total ordinance nullification resulting from judicial condemnation as to one class of use opened the door to unregulated allowance of another use. The case involved the question of whether, after the Supreme Court's condemnation, in *Girsh Appeal,* 437 Pa. 237, 263 A.2d 395 (1970), of multi-family housing exclusion in Nether Providence Township, another municipality, Warwick Township, could by amendment reform its own exclusion of multi-family housing by allowing it in a location other than the one as to which a challenger had made application. Quite soundly, the Supreme Court made it very clear that municipalities would not be permitted to zone around the *challenger* after a successful attack on a zoning ordinance. The Supreme Court said:

> We cannot agree that the Legislature intended in Subsection 2(ii), supra, to allow for an interim period after a judicial determination has been made in which the municipality may remedy its infirm ordinance. To so read the legislative intent would effectively grant the municipality a power to prevent any *challenger* from obtaining meaningful relief *after a successful attack on a zoning ordinance.* The municipality could penalize the successful challenger by enacting an amendatory ordinance designed to cure the constitutional infirmity, but also designed to zone around the challenger. Faced with such an obstacle to relief, few would undertake the time and expense necessary to have a zoning ordinance declared unconstitutional. . . . [A]n applicant, successful in having a zoning ordinance declared unconstitutional, should not be frustrated in his quest for relief by a retributory township. (Emphasis supplied.)

*Casey*, 459 Pa. at 228-9, 328 A.2d at 468. In this discussion the Supreme Court pointed out that after *Girsh Appeal*, 437 Pa. 237, 263 A.2d 395 (1970), held Nether Providence zoning to be invalid for excluding apartments, the township amended to allow apartments elsewhere than upon the challenger's land; the Supreme Court rejected that move.

With that preface, the *Casey* opinion then presents the passage on which the developer here relies:

We believe Subsection 2(ii) was an attempt by the Legislature to avoid the situation in which the municipality would be left without a valid zoning ordinance. Once a zoning ordinance is found to be constitutionally defective, the judgment invalidates the entire ordinance, not merely the zoning on a particular tract of land. By staying the "effect" of its judgment for a limited time, a court can avoid the chaotic situation which would arise if the municipality remained temporarily unzoned. The municipality is given an opportunity to cure the defective ordinance in accordance with the determination of the court without fear of a flood of applications by landowners seeking to take advantage of the invalidity. The original ordinance would remain in effect and subsequent applicants would be on constructive notice of the municipality's intent *to amend the defective ordinance* and, therefore, would be unable to obtain vested right based upon the ordinance's invalidity. In effect, a moratorium would be effectuated upon the challenging of the zoning ordinance and the application for building permits until an amended, constitutionally permissible ordinance could be enacted.

Since Warwick Township has already *amended* its zoning ordinance, the stay pro-

vided for in Subsection 2(ii) will not be necessary. *Future applicants must contend with the amended ordinance* as it is now written. However, we cannot allow a municipality to thwart a valid challenge to its zoning ordinance by adopting a curative provision, which was not considered or advertised prior to the time of the challenger's application. Therefore, we will not permit this provision for multi-family housing, enacted May 25, 1970, to deny appellee's rights. (Emphasis supplied.)

*Id.* at 229, 328 A.2d at 468-9. We note that in this very passage the Supreme Court suggested that the Warwick Township Ordinance could be validated as against future applicants by being "amended," without using the term "reenacted." Certainly the terminology is not decisive, but it is worth noting how *Casey* thereby differed from the present case, where the developer is not the challenger but one of those "future applicants," indeed one who made application more than three years after our *McKee* decision.

In *Casey,* both appellate courts held that, under the pending ordinance doctrine, the amendment did not affect the challenge which preceded its adoption. In this case, the full enactment of the amendments—not just the publication of notices—clearly antedated the inception of the challenge. The Montgomery Township amendment dates were July 26 and September 27, 1977 and March 24, 1980.[9]

---

[9]Ordinance No. 17KK—July 26, 1977, creating a new mobilehome park district;

Ordinance No. 17QQ—September 27, 1977, rezoning 87R-1 acres to mobilehome park district;

Ordinance No. 18C—July 26, 1977, adding mobilehome park regulations to the subdivision ordinance;

Ordinance No. 17-005—March 24, 1980, modifying mobilehome district regulations; and

The completed adoption of all those amendments preceded the multi-family housing application here, which Kasorex did not file until June 3, 1980. There is, therefore, no claim here that the amendments were ineffective under the pending ordinance rule.

In addition to the point that the *Casey* language is dictum in this particular situation, we must also remember that the quoted *Casey* opinion portion was concerned with the former provisions of MPC §1009, now repealed,[10] which provided that a court, after a successful challenge "shall have the power to declare the ordinance, map or any provision thereof invalid" and would also have power to

> (2)(II) Stay the effect of its judgment for a limited time to give the local governing body an opportunity *to modify or amend* the ordinance or map in accordance with the opinion of the court. (Emphasis supplied.)

The entire thrust of the *Casey* opinion is to make clear that, under the judicial stay authorized by statute, the allowable amendment would nevertheless not be permitted to leave the successful *challenger* empty-handed.

The peripheral impacts of later exclusionary zoning decisions by the Pennsylvania Supreme Court indicate that total nullification does not automatically follow judicial condemnation of an ordinance as exclusionary. Appellee cites *Surrick v. Zoning Hearing Board of Upper Providence Township,* 476 Pa. 182, 188, 382 A.2d 105, 108 (1977), along with *Girsh,*

---

Ordinance No. 17-006—March 24, 1980, rezoning additional acreage from R-1 to mobilehome park district.

The number and scope of Montgomery Township's amendments here illustrates that a reformation process by amendment can display a comprehensive approach, not just a fragmentary treatment.

[10] Formerly 53 P.S. §11009.

as a later example of a leading exclusionary zoning decision standing for the proposition that the zoning ordinance must be examined in its entirety when exclusion is claimed. However, that true principle does not support the appellee's non sequitur, that therefore the resulting decision must find the zoning ordinance wholly constitutional or wholly unconstitutional. Indeed, in the *Surrick* case, which held the Upper Providence Township ordinance to be exclusionary for failure to provide a fair share of land for a multi-family development, the actual relief did not assume that the condemned zoning ordinance had been obliterated. The relief was:

> We therefore direct that zoning approval for appellant's land be granted and that a building permit be issued conditional upon appellant's compliance with the administrative requirements of the zoning ordinance and other reasonable controls and regulations which are consistent with this opinion.

Thus the *Surrick* relief, read at its narrowest, certainly assumes that the zoning ordinance with its administrative requirements remained in existence.

*Township of Willistown v. Chesterdale Farms, Inc.*, 462 Pa. 445, 450, 341 A.2d 466, 468-9 (1975) had earlier articulated relief in the terms followed in *Surrick*.

*Davis v. Board of Supervisors of Easttown Township*, 32 Pa. Commonwealth Ct. 343, 379 A.2d 645 (1977), in our court, may have regarded *Casey* as implying total nullification, but nevertheless applied that reading only toward a procedural conclusion that a developer could pursue a land development appeal under MPC §1006, rather than a validity appeal under MPC §1004, after our court in a fair share case had condemned the municipality's zoning as exclusionary.

We were not asked to consider the implication of the *Surrick* and *Willistown* relief. Also to be noted is that our previous affirmance of the condemnatory decision in *Easttown* labeled the affirmed order as merely declaring "unconstitutional that portion of the Township Zoning Ordinance 109 limiting the construction of multiple-family dwellings" to a single district. *Waynesborough Corp. v. Easttown Township Zoning Hearing Board*, 23 Pa. Commonwealth Ct. 137, 138, 350 A.2d 895 (1976).

As noted in Ryan, Pennsylvania Zoning Law and Practice, §3.5.15 (1970), "[t]here can be no doubt that the Casey rule has been a strong force in inducing suburban townships to 'cure' their own ordinances voluntarily, and without litigation." To be sure, the deterrent effect has rested wholly upon the court-supported threat that the successful constitutional challenger would be rewarded by being allowed to put the excluded development on his land, thus receiving a kind of bounty in return for bearing the burden of challenge. However, a judicious balancing of developer and community interests does not support the idea of enlarging that threat into a punishment by opening avenues to non-challengers and thus extending the *Casey* rule beyond the *Casey* facts.

We must agree with Ryan, Pennsylvania Zoning Law and Practice, §3.5.15 (Supp. 1982) that

> there is little sense in saying that because a zoning ordinance improperly excludes mobile home parks, a developer should be permitted to erect a slaughter house in a residential zone ... there is no general rule that a statute which has an invalid provision is invalid in all respects ... there is no purpose in creating such a rule in exclusionary zoning cases.

We therefore reverse. Because the record does not reveal any subdivision regulation dispute apart

from the zoning ordinance issue, no remand appears to be needed.

ORDER

Now, December 1, 1982, the order of the Court of Common Pleas of Montgomery County, dated February 28, 1981, is reversed.