GLENDON ENERGY COMPANY

v.

BOROUGH OF GLENDON, et al.

Civ. A. No. 92–5323.

United States District Court,
E.D. Pennsylvania.

April 26, 1993.

Memorandum Denying Reconsideration
July 12, 1993.

Laurie H. Polinsky, Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, PA, Peter Kryn Dykema, Winston & Strawn, Washington, DC, for plaintiff.

Robert G. Hanna, Jr., Philadelphia, PA, Sean P. Flynn, Fox, Differ, Callahan, Sheridan, O'Neill & Lashinger, Norristown, PA, for defendants.

## OPINION

CAHN, Chief Judge.

Glendon Energy Company ["GEC"], the plaintiff, initiated this lawsuit against the defendants Karin Brittain, the Borough of Glendon, and the following members of the Borough Council of Glendon: George Tombler, Jr., James McAllister, Joyce Moore, Leo Templeton, Lana Farmer, and Edwin Brittain. Except for Karin Brittain, all of the defendants are represented by the same counsel and will hereinafter be referred to as "the remaining defendants." The plaintiff alleges violations of the Fifth and Fourteenth Amendment to the U.S. Constitution, 42 U.S.C. § 1983, 42 U.S.C. § 1988, and numerous state law claims. Currently, this court must decide whether the plaintiff's claims are ripe for review. For the reasons set forth below, the plaintiff's claims are not ripe, and therefore will be dismissed.

## I) BACKGROUND

Karin Brittain and the remaining defendants each filed a motion to dismiss the plaintiff's claims. Additionally, the remaining defendants filed a motion for a protective order. While these motions were pending, the Third Circuit Court of Appeals issued its opinion in *Taylor Investment, Ltd. v. Upper Darby Township,* 983 F.2d 1285 (3d Cir. 1993). *Taylor,* like this case, involved constitutional challenges to a land-use decision made by township officials pursuant to 42 U.S.C. § 1983. The court of appeals found that the plaintiff's claims were not ripe for judicial review and dismissed them as premature. Because the court emphasized that "unripe claims should ordinarily be disposed of on a motion to dismiss [for a lack of subject matter jurisdiction, instead] of summary judgment," *Taylor,* 983 F.2d at 1290 & n. 10, and because this case is factually similar to *Taylor,* this court denied the outstanding motions without prejudice and directed the parties to brief the issue of ripeness.

The lawsuit arises out of the plaintiff's efforts to develop a solid-waste-to-energy resource recovery facility and recycling center ["the Project"] in the Borough of Glendon, Northampton County, Pennsylvania. The process commenced in 1986 when the plaintiff's president met with the Council members of the Borough of Glendon. On September 3, 1986, the Glendon Borough Council passed a favorable resolution regarding the plaintiff's Project. On June 3, 1987, the Glendon Council adopted Ordinance 87–1, which permitted the plaintiff to use the site for the proposed project. It also provided that the Borough and the plaintiff would execute a Host Community Agreement. The Agreement designated and authorized the site as a permitted use for the plaintiff's Project provided that the plaintiff complied with certain requirements. In August of 1987, the Borough adopted Ordinance 87–2, which states that resource recovery facilities are lawful in an area zoned as Industrial–Office. The land that the plaintiff had earmarked for the project was in such an area.

After these ordinances were adopted, the plaintiff obtained $75,000,000 in financing, and purchased the land to be used for the

Project for $1,300,000. The plaintiff also paid $1,000,000 to the company that would reserve portions of its landfills for disposal of waste generated by the plaintiff's Project. The plaintiff also obtained several permits that were necessary to operate the facility. In February, 1987, the plaintiff also submitted to the zoning officer of Glendon an application for permission to undertake construction ["1987 Application"]. On numerous occasions either the Borough Engineer, or the Borough Zoning Officer–Building Inspector (or both) requested that the plaintiff file supplemental information. Ultimately, on August 11, 1989, Edwin Atkinson, the Borough Zoning Officer–Building Inspector, denied the plaintiff's request. The denial was purportedly based upon the Borough Council's rejection of the site plan. The site plan had been rejected because it did not comply with 53 Pa.Stat.Ann. § 4000.511(a), which provides that "[t]he [Pennsylvania Department of Environmental Resources] shall not issue a permit for, nor allow the operation of ... a new resource recovery facility within 300 yards of ... parks ... existing prior to the date the department has received an administratively complete application...." Heil Park, which is owned by the City of Easton, was within 300 yards of the proposed site.

In February of 1992, the plaintiff purchased approximately nine acres of land, which was contiguous to the property that it had originally acquired. This acquisition enabled the plaintiff to reposition most of the Project more than 300 yards from Heil Park. On February 29, 1992, the plaintiff then filed a Conditional Use Application with the Borough. The sole difference between that application and the one in 1987 was the location of the project. At a hearing, GEC allegedly produced evidence to show that the Project complied with Borough regulations, and would inure to the health, safety, and welfare of the Borough. It also produced evidence to demonstrate that the completed facility would not cause any pollution problems. GEC alleges that Borough did not meaningfully rebut any of GEC's evidence. At the conclusion of the hearing, the Council unanimously voted to deny GEC's application. GEC maintains that the Council's determination was not supported by evidence present-

ed at the hearing, and that the hearing was a sham.

Meanwhile in 1987, local opposition to the project surfaced. Representatives of the opposition were then elected to the Glendon Borough Council. The plaintiff cites four separate attempts by the defendants to enact confiscatory special legislation, the effect of which would destroy its Project. First, the plaintiff contends that defendant Edwin Brittain, in his capacity as a Borough Councilman, introduced a motion to revoke the 1986 resolution, and the two ordinances adopted in 1987. Mr. Brittain also introduced a motion to amend ordinance 87–2 so that resource recovery facilities would not be an approved conditional use of the land, and a motion to rezone the plaintiff's property as residential. Despite advice from the Borough Solicitor that such acts were unlawful, on July 6, 1988, the Borough Council adopted two ordinances that effectively destroyed the project. Three weeks later the Mayor of Glendon vetoed the two proposed ordinances.

The second alleged attempt to destroy the plaintiff's project came in 1989, when Mr. Brittain along with defendants Tombler and Templeton, who were also members of the Borough Council, introduced another ordinance to rezone the plaintiff's property. The Borough Council adopted this proposed ordinance on June 7, 1989. The Mayor of Glendon vetoed this ordinance as well.

The third alleged attempt occurred when a petition was presented to the Borough Council that would amend the Borough Zoning Code in order to frustrate the plaintiff's project. This petition was signed by Mr. Brittain and defendant Karin Brittain, who is his wife. Defendant Lana Farmer, moved that the property be rezoned in accordance with the petition. The motion was subsequently withdrawn.

The fourth attempt allegedly occurred when the Borough Council secretly convened in order to rezone the plaintiff's property. The Council arranged to have an "executive session," which would be closed to the public. At the executive session, the Council unanimously agreed to have a hearing regarding the rezoning of the plaintiff's property from

Industrial–Office to Manufacturing–Office. After a hearing was held, the Council convened on August 5, 1992. At this meeting the Council unanimously voted to enact Ordinance 92–3, which would rezone the plaintiff's property. The same day, the Mayor of Glendon signed the ordinance. The plaintiff did not challenge the validity of the ordinance or seek to obtain a zoning amendment or variance to permit the project to go forward. Instead, the plaintiff filed this lawsuit. On February 1, 1993, the Borough enacted Ordinance 93–1. Ordinance 93–1 repealed Ordinance 92–3.

The plaintiff's complaint alleges that the Borough acted arbitrarily and took GEC's property without compensation. Specifically, the plaintiff alleges that the denial of GEC's application to undertake construction, the Borough's denial of GEC's application for a conditional use permit, and the enactment of Ordinance 92–3, each effectuated an unconstitutional taking. GEC also alleges that violations of substantive due process occurred when the defendants denied the 1987 Application and the 1992 Application. Finally, GEC avers that the defendants conspired, *inter alia*, to take its property without procedural due process of law when they failed to give the plaintiff proper notice of the bases for the Council's actions.

## II) STANDARD FOR MOTION TO DISMISS

Under Fed.R.Civ.P. 12(b)(1), a party to a lawsuit may make a Motion to Dismiss for "lack of jurisdiction over the subject matter[.]"[1] A case is properly dismissed pursuant to Rule 12(b)(1) "where the alleged claim under the Constitution ... clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946), quoted in *Growth Horizons, Inc. v. Delaware County, Pennsylvania,* 983 F.2d 1277, 1280 (3d Cir.1993). Thus, dismissal for a lack of jurisdiction is proper where the right claimed

has been "foreclosed by prior decisions of the Court." *Growth Horizons,* 983 F.2d at 1280 (citations omitted). In deciding such a motion, the court is "not limited to the face of the pleadings." *Taylor,* 983 F.2d at 1290, citing *Armstrong World Industries, Inc. v. Adams,* 961 F.2d 405, 410, n. 10 (3d Cir. 1992). "Rather, as long as the parties are given an opportunity to contest the existence of federal jurisdiction, the court 'may inquire, by affidavits or otherwise, into the facts as they exist.'" *Armstrong,* 961 F.2d at 410 n. 10, quoting *Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1011, 91 L.Ed. 1209 (1947). Moreover, unlike a motion made under Rule 12(b)(6), "the court is 'free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Boyle v. Governor's Veterans Outreach & Assistance Center,* 925 F.2d 71, 74 (3d Cir.1991), quoting *Mortensen v. First Federal Savings and Loan Association,* 549 F.2d 884, 891 (3d Cir.1977).

## III) DISCUSSION

As the Third Circuit Court of Appeals recently noted, "ripeness is 'peculiarly a question of timing.'" *Taylor,* 983 F.2d at 1290 (quoting *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 580, 105 S.Ct. 3325, 3332, 87 L.Ed.2d 409 (1985)). "The doctrine is essentially viewed as a prudential offshoot of the case or controversy requirement under Article III of the Constitution." *Binker v. Commonwealth of Pennsylvania,* 977 F.2d 738, 753 (3d Cir.1992). It has also, however, been characterized as a "prudential limitation on federal jurisdiction." *Taylor,* 983 F.2d at 1290 (citations omitted). Regardless of which interpretation is more appropriate, it is clear that the primary issue that ripeness doctrine addresses is **when** a proper party may bring an action. *See Armstrong,* 961 F.2d at 411.

In the context of land-use cases, there are two ripeness issues that the court must address. First, whether the property owner

---

1. Since subject matter jurisdiction cannot be waived, the court has a duty to raise the issue even if the parties fail to do so. 2A James W. Moore et al., *Moore's Federal Practice* ¶ 12.23 (2d ed. 1991); *see also Trent Realty Associates v. First*

*Federal Savings and Loan Association of Philadelphia,* 657 F.2d 29, 31 (3d Cir.1981) (where the Third Circuit Court of Appeals "*sua sponte* raised the question of federal subject matter jurisdiction").

has satisfied the "finality rule." Second, even if the property owner has satisfied the finality rule, the court must determine whether Pennsylvania has any procedures that would enable the property owner to seek compensation for the alleged taking. If so, the claim will not be ripe because the property owner must first seek compensation through those state-provided procedures. *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194, 105 S.Ct. 3108, 3120, 87 L.Ed.2d 126 (1985).

## A) FINALITY RULE

■ The essence of the finality rule is that constitutional challenges to decisions made by local land-planning authorities are not ripe unless the authorities have rendered a "final decision on the nature and extent of the impact of the zoning ordinances on plaintiff's property." *Taylor*, 983 F.2d at 1290. *See also Williamson*, 473 U.S. at 186, 105 S.Ct. at 3116 (1985) (holding that "a claim that the application of government regulations [results in a constitutional violation] is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue"). Indeed, it is an *"essential prerequisite"* to this court's scrutiny of a takings claim that the government body make "a final and authoritative determination of the type and intensity of development legally permitted on the subject property." *Mac-Donald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 348, 106 S.Ct. 2561, 2566, 91 L.Ed.2d 285 (1986) (emphasis added).

In *Taylor*, the plaintiffs filed a civil rights action in district court after the zoning officer of Upper Darby Township revoked a use permit because the plaintiffs had allegedly submitted a false and misleading application. Although the plaintiffs could have reapplied for the use permit, appealed the revocation to the Township Zoning Board, or sought a variance or special exception, they opted to bring a claim under 42 U.S.C. § 1983. The

court held that under the finality rule, "a property owner suffers no mature constitutional injury until the zoning authority defines the application of the zoning ordinance and defines the harm to the owner." *Taylor*, 983 F.2d at 1291.[2] Although the court did not decide whether the finality rule applies to all constitutional claims, it did determine that in addition to takings claims, *see MacDonald*, 477 U.S. at 348, 106 S.Ct. at 2566; *Williamson*, 473 U.S. at 187, 105 S.Ct. at 3117, the finality rule is appropriately used where the property owner's claims are premised on substantive due process, procedural due process, or equal protection. *Taylor*, 983 F.2d at 1292.

The Third Circuit Court of Appeals ultimately determined that none of the plaintiffs' claims were ripe for adjudication. With respect to the plaintiffs' substantive due process claim, the court found that even though the zoning officer's actions may have been arbitrary and capricious, the Township's decision was not final. *Taylor*, 983 F.2d at 1292. The court reached the same conclusion with the plaintiffs' procedural due process claim. It reasoned that "[a]ny deprivation suffered by plaintiff's tenant as a result of the revocation of the use permit could have been quickly remedied by the zoning hearing board under the applicable legislative scheme, a scheme we have held to be consistent with due process." *Taylor*, 983 F.2d at 1294. Therefore, since all of GEC's federal claims are premised on either the due process clause or the takings clause, the requirements of the finality rule must be satisfied for GEC's claims to be ripe.

GEC does not dispute that the finality rule applies to all of its constitutional claims. Instead, it contends that the decisions made by the Borough or its agents are final, and thus this case is ripe for review. Essentially, GEC identifies three distinct actions by the Borough that violated its constitutional rights: 1) the denial of GEC's 1987 application to undertake construction; 2) the denial of GEC's 1992 application for a conditional use permit; and 3) the campaign to rezone

---

**2.** The court of appeals did not analyze the extent to which state or local legislatures can define

"finality" for federal procedural purposes.

GEC's property, culminated by the enactment of Ordinance 92–3. GEC also asserts that even if the government decisions are not final, the futility exception to the finality rule is applicable, and thus GEC's claims are not premature.

## 1) THE DENIAL OF GEC'S 1987 APPLICATION TO UNDERTAKE CONSTRUCTION

■ GEC's position is that the denial of its application to undertake construction is justiciable because the Borough issued a final decision. Edwin Atkinson, the Borough Zoning Officer–Building Inspector, denied the application on August 11, 1989. GEC alleges that Atkinson denied the application because the Borough Council denied GEC's site plan proposal.[3] Assuming GEC's allegation is true, as this court must on a motion to dismiss, it does not follow that Atkinson's decision is final.

Neither the Pennsylvania Municipalities Planning Code, 53 Pa.Stat.Ann. § 10101, *et seq.* ["MPC"], nor the 1987 Ordinance suggests that a zoning officer's decision to deny a construction permit amounts to a final decision by the Borough. On the contrary, both the MPC and the 1987 Ordinance afford some sort of recourse for an aggrieved property owner. Specifically, 53 Pa.Stat.Ann. § 10909.1(a)(3) provides that the zoning hearing board will have exclusive jurisdiction and render final adjudications on "appeals from the determination of the zoning officer, including, but not limited to, the granting or denial of any permit...." In addition, § 7–3 of the 1987 Ordinance authorizes the zoning hearing board

upon an appeal by an affected landowner, ... to hear and decide:

7–3.1 Any matter where an appellant ... alleges that the Zoning Officer was in error in refusing to issue a building permit as a result of misinterpreting ... any section or part of this Ordinance ...

7–3.3 Any other matter relating to this Ordinance, where an appellant seeks a re-

view of any decision, order or ruling made by a Zoning Officer....

GEC's contention that the denial of the application is a final decision ignores the standard imposed by the court of appeals. No matter how much GEC tries to attribute the denial of the application to the Borough Council because the Council rejected the site plan, the determination was made by the zoning officer. As *Taylor* teaches, under such circumstances only a determination by the zoning hearing board would be final for purposes of ripeness. *Taylor*, 983 F.2d at 1293. If the zoning officer erroneously denied the application by relying exclusively upon the Borough Council's rejection of the site plan, the zoning hearing board could have rectified the problem. Therefore, GEC's claim that the denial of its application to undertake construction is premature.

## 2) THE DENIAL OF GEC'S 1992 CONDITIONAL USE PERMIT

■ A careful review of the MPC leads this court to conclude that the Borough Council's denial of GEC's 1992 application for a conditional use permit is final. 53 Pa.Stat. Ann. § 10107(a) contains definitions of words and phrases that are used in other sections of the MPC. Included in § 10107(a) is the phrase "governing body," which includes, among other entities, borough councils. Therefore, the Glendon Borough Council is a governing body within the meaning of the MPC. In addition, 53 Pa.Stat.Ann. § 10909.-1(b) provides that

[t]he governing body, or except as to clauses (3), (4), and (5), the planning agency, if designated, shall have exclusive jurisdiction to hear and render *final adjudications* in the following matters: ...

(3) Applications for conditional use under the express provisions of the zoning ordinance pursuant to section [10603.-2(c)(2) ]....

(emphasis added). The 1987 Ordinance does not designate a planning agency. Moreover, it expressly provides in § 4–5.3 that "[a]pplications for conditional uses are subject to the

---

**3.** GEC has appealed the Borough Council's decision denying the site plan proposal to the Court of Common Pleas for Northampton County.

action of the Borough Council...." No provision in the 1987 Ordinance enables a party whose conditional use application has been denied to appeal to the zoning hearing board. Accordingly, the decision by the Borough Council is final for purposes of ripeness.

The defendants contend that the decision is not final because there are other arrows in GEC's administrative quiver. This court disagrees. Unlike the situation in *Taylor,* GEC did not have other options at its avail. The plaintiff could not have obtained a special exception because § 4–5.2 of the Ordinance, which covers special exception uses for property zoned as Industrial–Office, limits these uses to gasoline stations, motor vehicle repair shops, or outdoor storage of construction equipment. *See* §§ 4–5.21 and 4–5.22. Without such express authorization in the ordinance, the zoning hearing board may not grant a special use exception. *See* 53 Pa. Stat.Ann. § 10912.1; *N. Pugliese, Inc. v. Palmer Township Zoning Hearing Board,* 140 Pa.Cmwlth. 160, 592 A.2d 118, 122 (1991). Moreover, GEC could not have obtained a variance. Although 53 Pa.Stat.Ann. § 10909.1(a)(5) gives the zoning hearing board exclusive jurisdiction to hear and render final adjudications in applications for variances, it may grant a variance only if the provisions of 53 Pa.Stat.Ann. § 10910.2 are satisfied. Section 10910.2 contains a conjunctive six-part test. The first prong specifically requires that

> there [be] unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular piece of property and the unnecessary hardship is *due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance* in the neighborhood or district in which the property is located.

§ 10910.2(a)(1) (emphasis added). The hardship inflicted on GEC by the ordinance is unrelated to the physical circumstances of the land; and since the satisfaction of this criterion is necessary for the zoning hearing board to grant a variance, GEC's failure to pursue one is not fatal to its claim.

■ Lastly, GEC could not appeal the denial of the conditional use to another administrative body. Appeals of an adverse determination on a conditional use permit are directly appealable to the "court of common pleas of the judicial district wherein the land is located." 53 Pa.Stat.Ann. § 11002–A. Additionally, such an appeal is the *"exclusive mode* for securing review of any decision rendered pursuant to Article IX." 53 Pa. Stat.Ann. § 11001–A (emphasis added). "A claim is 'final,' however, after the zoning hearing board has rendered a decision. Finality does not require state court review of the board's decision[,]" because a land-owner need not exhaust[4] its administrative remedies for purposes of finality. *Taylor,* 983 F.2d at 1293 n. 12. Accordingly, GEC's claim does not fail the finality test.[5]

## 3) THE EFFECT OF ORDINANCE 92–3

■ Ordinance 92–3 rezoned the property from Industrial–Office to Manufacturing–Office, and Resource Recovery Facilities are

4. It is well settled that the exhaustion doctrine is conceptually distinct from the finality doctrine. *See Williamson,* 473 U.S. at 192, 105 S.Ct. at 3119.

> While the policies underlying the two concepts overlap, the finality requirement is concerned with whether the initial decision-maker has arrived at a definitive position on the issue that inflicts actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate.

*Williamson,* 473 U.S. at 193, 105 S.Ct. at 3120. Thus, it is clear that the court in *Taylor* perceives that resolution of an issue in State Court would

simply remedy the injury that occurred when the township reached a final decision.

5. It should be emphasized that the land-owner's taking claim is not automatically ripe for review in federal court merely because an administrative agency's decision regarding the land-owner's property is final. The final decision simply satisfies the first prong of the ripeness test. The land-owner must still seek compensation through state provided procedures because the "Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Williamson,* 473 U.S. at 194, 105 S.Ct. at 3120. That component of the ripeness claim is discussed *infra,* in section III(B).

not permitted in areas so zoned. GEC never challenged the validity of the new zoning ordinance before the zoning hearing board, and maintains that such a challenge was unnecessary because it "has nothing to do with the doctrine of ripeness." GEC's Memorandum in Opposition to Defendant's Motion to Dismiss Complaint on the Grounds of Ripeness ["GEC Ripeness Memo"], at p. 6. GEC's contention is erroneous because the mere enactment of an ordinance is not a final decision by the Borough.[6] Under the MPC

> [t]he zoning hearing board shall have exclusive jurisdiction to hear and render final adjudications in the following matters:
>
> (1) Substantive challenges to the validity of any land use ordinance ...
>
> (2) Challenges to the validity of a land use ordinance raising procedural questions or alleged defects in the process of enactment or adoption which challenges shall be raised by an appeal taken within 30 days after the effective date of said ordinance.

53 Pa.Stat.Ann. § 10909.1(a). GEC did not afford the local authorities the opportunity to determine finally the scope of its injury. This omission ignores that "[l]ocal zoning authorities are flexible institutions ... that may 'give back with one hand what they have taken with the other.'" *Taylor*, 983 F.2d at 1294 (quoting *MacDonald*, 477 U.S. at 350, 106 S.Ct. at 2567). Thus, GEC's failure to attack the ordinance under § 10909.1(a) renders its claim unripe for disposition in this court.

Even though GEC has not challenged the validity of the ordinance with the zoning hearing board, it nevertheless persists that its claim is ripe for review. The basis of GEC's argument is that because the Borough repealed the ordinance before this court ruled on the ripeness issue, a final decision has been made by the township. Specifically, GEC argues that the abrogation of Ordinance 92–3 does not undo the injuries that it has already sustained as a result of the defendants' actions.[7] *See* GEC's Memorandum on the Effect of the Third Circuit's Decision in *Taylor Investment, Ltd. v. Upper Darby Township* ["GEC *Taylor* Memo"], at p. 6. In fact, GEC maintains that because the revocation actually crystallizes its injury, the underlying purposes of the finality rule have been satisfied. This court construes GEC's "crystallized injury" to mean that its taking claim has been transformed into a temporary taking claim.[8]

GEC's position misses the mark. Implicit in GEC's argument that the revocation of Ordinance 92–3 satisfies the requirements of the finality rule is that it had in fact properly complied with all of the procedural requirements necessary to establish that a final decision had been made. The zoning hearing board is the body that originally determines whether the plaintiff suffered a constitutional injury. Simply because Ordinance 92–3 was repealed by Ordinance 93–1 does not mean that GEC suffered an injury when Ordinance 92–3 was enacted. Indeed, "in the face of

---

**6.** The mere enactment of an ordinance may amount to a taking when the ordinance is attacked facially. *See Agins v. City of Tiburon,* (447 U.S. 255, 260–62, 100 S.Ct. 2138, 2141–42, 65 L.Ed.2d 106 (1980) (where the Court determined that the plaintiffs' facial challenge to the constitutionality of the ordinances failed because the ordinances substantially advanced state goals and did not deny the plaintiffs' of the economic uses of their land). Indeed, the finality rule is not even applicable to facial challenges. *See Southern Pacific Transportation Co. v. City of Los Angeles,* 922 F.2d 498, 507 (9th Cir.1990); *General Offshore Corp. v. Farrelly,* 743 F.Supp. 1177, 1188 (D.V.I.1990). In this case, GEC does not challenge the facial validity of the ordinance; rather, it alleges that the defendants have taken "specific contractual and regulatory rights." GEC Ripeness Memo, at p. 6. GEC never argues that the finality rule does not apply; it simply asserts that the decisions are final because there

were no administrative options available to it. *See* GEC Ripeness Memo, at p. 4.

**7.** GEC concedes that the enactment of Ordinance 93–1 ends the potential of it suffering prospective injuries resulting from the enactment of Ordinance 92–3. GEC *Taylor* Memo at p. 6.

**8.** This court notes that, for purposes of the Fifth Amendment, there is no distinction between permanent takings and temporary takings. *See First Lutheran Church v. Los Angeles County,* 482 U.S. 304, 318–19, 107 S.Ct. 2378, 2387–88, 96 L.Ed.2d 250 (1987). The Court specifically held that "[i]nvalidation of the ordinance or its successor ordinance ... though converting the taking into a 'temporary' one, is not a sufficient remedy to meet the demands of the Just Compensation Clause." *First Lutheran Church,* 482 U.S. at 319, 107 S.Ct. at 2388.

potential constitutional injuries, the [Supreme] Court has held that local authorities should be given the opportunity to fully and finally determine the scope of the injury before the federal claims ripen." *Taylor*, 983 F.2d at 1294. GEC cannot circumvent this requirement and come into federal court at this juncture. Until the zoning hearing board has rendered a final decision on the validity of Ordinance 92–3, GEC's claim is not ripe. *See Taylor*, 983 F.2d at 1292 (holding that even though the defendant's actions may have been arbitrary and capricious, the plaintiff's claim was not ripe because the township had not rendered a final decision).

Additionally, the fact that the Borough has taken corrective measures in the interim does not alter this conclusion. The Pennsylvania Supreme Court addressed a similar sequence of events in *Casey v. Zoning Hearing Board of Warwick Township*, 459 Pa. 219, 328 A.2d 464 (1974). In *Casey*, Harcourt Wells, Inc., questioned the validity of the township's zoning ordinance and properly requested a hearing before the zoning hearing board. Before the board began its hearings on the challenge, the township adopted an amendment that cured all of the alleged constitutional defects.[9] After the hearings, but before the zoning hearing board issued its decision, Harcourt Wells' successor in interest, Casey, filed a lawsuit that alleged that because the amendment resolved the problem, the zoning hearing board had no authority to consider the validity of the ordinance. The Pennsylvania Supreme Court disagreed because "the amendment was not 'pending' when [the] challenge was commenced." *Casey*, 328 A.2d at 467. The Court reasoned that to hold otherwise would enable "the municipality to penalize the successful challenger by enacting an amendatory ordinance designed to cure the constitutional infirmity, but also designed to zone around the challenger." *Casey*, 328 A.2d at 468. The Court concluded that the municipality could not

"thwart a valid challenge to its zoning ordinance by adopting a curative provision, which was not considered ... prior to the time of the challenger's application." *Casey*, 328 A.2d at 469.

In this case, like *Casey*, GEC challenged the ordinance long before Ordinance 93–1 was pending. The difference between the two is that GEC challenged the validity of the ordinance in this court rather than before the zoning hearing board. Nevertheless, GEC's unfortunate choice of forums should not be fatal to its claim. The spirit of the holding in *Casey* [10] suggests that the zoning hearing board is the proper governmental entity to render a final decision on the validity of Ordinance 92–3. Moreover, strong policy considerations advise that local government, rather than federal courts, resolve land-use disputes. *See Village of Belle Terre v. Boraas*, 416 U.S. 1, 13, 94 S.Ct. 1536, 1543, 39 L.Ed.2d 797 (1974) (Marshall, J., dissenting) ("[Zoning] may indeed be the most essential function performed by local government"); *Taylor*, 983 F.2d at 1291; *Rogin v. Bensalem Township*, 616 F.2d 680, 698 (3d Cir.1980), *cert. denied*, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981) (finding that "land-use regulation generally affects a broad spectrum of persons and social interests, and ... local political bodies are better able than federal courts to assess ... such legislation"). Finally, a contrary decision would actually discourage, rather than encourage, aggrieved land-owners from seeking relief from the zoning hearing board. GEC should not be able to circumvent the well-established procedures for challenging the validity of a zoning ordinance by instead using a federal lawsuit to induce the Borough to repeal the ordinance. Accordingly, the plaintiff must first proceed to the zoning hearing board for a determination on the validity of Ordinance 92–3. Until GEC has pursued such avenues and sought compensa-

---

9. In this case the Borough of Glendon enacted Ordinance 93–1 rather than amend Ordinance 92–3. Nevertheless, there is "little procedural difference" between an enactment of a zoning ordinance and an amendment to a zoning ordinance. *Appeal of Kasorex*, 70 Pa.Cmwlth. 193, 452 A.2d 921, 923 (1982).

10. This court notes that although the statutory provision considered in *Casey* has since been repealed, the reasoning of the decision is still sound. *See Fernley v. Board of Supervisors of Schuylkill Township*, 509 Pa. 413, 502 A.2d 585, 589 n. 8 (1985).

tion under Pennsylvania's procedures, the plaintiff's claim is not ripe for adjudication.[11]

### 4) THE FUTILITY EXCEPTION

 Because the denial of the 1987 Application and the enactment of Ordinance 92–3 were not final decisions, this court examines GEC's claim that this case is ripe under the "futility exception" to the finality rule. The futility exception states that an aggrieved party may forego the administrative process, and proceed in federal court on a constitutional claim, where special circumstances dictate that pursuing additional relief with the government agency would be fruitless. *See Gilbert v. City of Cambridge*, 932 F.2d 51, 60–61 (1st Cir.1991). "To come within the exception, a sort of inevitability is required: the prospect of refusal must be certain (or nearly so)." *Gilbert*, 932 F.2d at 61. In addition, the property owner, who bears the burden of proof, must make at least one application for administrative relief before the futility exception may be invoked. *Gilbert*, 932 F.2d at 61. Other courts have also recognized this exception. *See, e.g., Southern Pacific Transportation Co. v. Los Angeles*, 922 F.2d 498, 504 (9th Cir.1990); *Eide v. Sarasota County*, 908 F.2d 716, 726–27 (11th Cir.1990). Nevertheless, even if the exception is recognized in this circuit,[12] it is not applicable here. GEC neither appealed to the zoning hearing board after its 1987 application was denied, nor applied for relief after Ordinance 92–3 was enacted. Moreover, GEC has not demonstrated that zoning hearing board, as opposed to the Borough Council, would inevitably deny it any sort of relief.

### B) COMPENSATION THROUGH STATE–PROVIDED PROCEDURES

 The only prong of GEC's complaint that survives scrutiny under the finali-

ty rule is the Borough Council's denial of GEC's conditional use permit. GEC alleges that this particular action by the defendants gives rise to a taking without just compensation, and a denial of due process. However, a takings claim is not ripe for review in federal court if an aggrieved landowner may recover compensation through a state established procedure. *See Williamson*, 473 U.S. at 195, 105 S.Ct. at 3121. The Court held that "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Williamson*, 473 U.S. at 195, 105 S.Ct. at 3121. *See also, Schertel v. Rex*, 764 F.Supp. 1002, 1004 (E.D.Pa.1991) (holding that there is simply no violation of the Fifth Amendment until just compensation has been denied). Additionally, the burden is on the property owner to demonstrate that the state's procedure is either "unavailable or inadequate" before the claim is ripe. *Southview Associates, Ltd. v. Bongartz*, 980 F.2d 84, 100 (1st Cir.1992) (quoting *Williamson*, 473 U.S. at 197, 105 S.Ct. at 3122); *Austin v. City and County of Honolulu*, 840 F.2d 678, 680 (9th Cir.), *cert. denied*, 488 U.S. 852, 109 S.Ct. 136, 102 L.Ed.2d 109 (1988). To meet this burden the property owner must do more than show that the state procedure is unsure and undeveloped; it must demonstrate either statutory or judicial rejection of such procedures, or actually bring an unsuccessful suit in state court. *Southview Associates*, 980 F.2d at 100 (dismissing the plaintiff's claims because it failed to seek compensation in the Vermont courts); *Abbiss v. Delaware Department of Transportation*, 712 F.Supp. 1159, 1162 (D.Del.1989) (Roth, J.) (finding the plaintiffs' claims to be prema-

---

**11.** This holding does not deprive GEC of an opportunity to recover from the injuries it has allegedly suffered. Should the zoning hearing board determine that Ordinance 92–3 is not valid, then GEC may pursue damages under the Eminent Domain Code, *see* Part III(B), *infra*. On the other hand, if the zoning hearing board determines that Ordinance 92–3 is valid, then finality rule will have been satisfied, and GEC's claim will be ripe for adjudication in federal court.

**12.** In land-use cases, the Third Circuit Court of Appeals has not, as of yet, adopted the "futility exception." Indeed in *Taylor*, the court repeatedly emphasized that unless a final decision had been rendered, the property owner's constitutional claim was premature. The court did not qualify its holding. Thus, *Taylor* may be fairly read to reject implicitly the futility exception in this circuit.

ture because they did not establish that Delaware's post deprivation remedies were inadequate).

In this case, the plaintiff has not satisfactorily demonstrated that Pennsylvania's procedures for recovering just compensation are unavailable or inadequate. The Pennsylvania Courts, under the Eminent Domain Code, 26 Pa.Stat.Ann. §§ 1–101—1–903, may provide the plaintiff with just compensation for a taking. Specifically, § 1–502(a) enables the condemnee [13] to file a petition requesting the appointment of viewers to ascertain just compensation. The plaintiff contends, however, that because a regulatory taking, rather than physical taking, has occurred it may only challenge the ordinance pursuant to the Municipalities Planning Code ["MPC"], 53 Pa. Stat.Ann. §§ 10101–11202. The plaintiff further maintains that because the available relief under MPC is limited to invalidating the ordinance, Pennsylvania does not provide an adequate process for obtaining compensation. GEC cites *Odhner v. Township of Woodward*, 143 Pa.Cmwlth. 450, 599 A.2d 276, 278 (1991), and *Appeal of Doyle*, 142 Pa.Cmwlth. 672, 598 A.2d 352, 354 (1991) to support its position.

This court finds the plaintiff's position untenable. Although the plaintiff must *originally* seek relief pursuant to the MPC, suing under the MPC is not the *exclusive* method of relief available to it. Under the Eminent Domain Code, the plaintiff may recover just compensation for a regulatory taking once the ordinance in question is determined to be unconstitutional. *See Gaebel v. Thornbury Township*, 8 Pa.Cmwlth. 399, 303 A.2d 57, 60 (1973). The plaintiff must simply seek relief under the MPC before it seeks relief under the Eminent Domain Code. In fact, a more careful reading of the cases cited by the plaintiff suggests that Pennsylvania law does enable a property owner to recover for a regulatory taking once relief under the MPC has been granted. *See Odhner*, 599 A.2d at 278 (holding "until the landowner has pursued the remedies provided within the MPC to invalidate the ordinance, a compensation

claim for the temporary taking is not ripe"); *Appeal of Doyle*, 598 A.2d at 354 (holding "[the plaintiff] must first exhaust [its] remedies under the MPC before [it] can bring an action for inverse condemnation under the Eminent Domain Code"). Other Pennsylvania court decisions further solidify the conclusion that GEC could be compensated for its taking claim. *See e.g., Truck Terminal Realty Co. v. Commonwealth Department of Transportation*, 486 Pa. 16, 403 A.2d 986, 989 (1979) (finding that an aggrieved property owner could be compensated for a temporary taking provided that the governmental interference was arbitrary and unreasonable); *McClimans v. Board of Supervisors of Shenango Township*, 107 Pa.Cmwlth. 542, 529 A.2d 562, 570 n. 5 (1987) (observing that if an ordinance is found to effectuate an unconstitutional taking, "it may well be that Appellants then will have to proceed under the provisions of the Eminent Domain Code ... to obtain just compensation for the taking inasmuch as there is no provision in the MPC for the award of monetary damages"). This court holds that the plaintiff's failure to pursue its claim for compensation in the Pennsylvania Courts renders the taking claim unripe for adjudication in federal court. Accordingly, the plaintiff's claim is not ripe for review and it must be dismissed.

Finally, to the extent that the denial of the conditional use permit also gives rise to due process violations, this court finds that those claims are premature as well. GEC's "due process claims will be greatly affected", *Schertel*, 764 F.Supp. at 1005 n. 5, should it subsequently be determined that the defendants' actions did not effectuate a taking of GEC's property. The plaintiff's conspiracy allegation meets the same fate because "§ 1983 does not provide a cause of action per se for conspiracy to deprive one of a constitutional right." *Defeo v. Sill*, 810 F.Supp. 648, 658 (E.D.Pa.1993). Until there has been a deprivation, one has no cause of action under § 1983. *Defeo*, 810 F.Supp. at 658. Since GEC has not demonstrated that

---

**13.** Condemnee is defined as "the owner of a property interest taken, injured or destroyed, but does not include a mortgagee, judgment creditor, or other lienholder." 26 Pa.Stat.Ann. § 1–201(2).

it has been deprived of its constitutional rights, the conspiracy claim is not mature.

## IV) CONCLUSION

For the reasons set forth above the plaintiff's claims shall be dismissed without prejudice. At this juncture, the plaintiff's federal claims are not ripe for review because the plaintiff has either failed to satisfy the finality rule or failed to demonstrate that Pennsylvania has no adequate procedure for providing compensation. Should the plaintiff ultimately satisfy these criteria, it may refile its suit at that time. Moreover, since all of GEC's federal claims will be dismissed without prejudice, and there is no diversity of citizenship between the plaintiff and the defendants, this court will also dismiss without prejudice GEC's state law claims.

## GLENDON ENERGY COMPANY

### v.

### BOROUGH OF GLENDON, et al.

#### MEMORANDUM ON RECONSIDERATION

CAHN, Chief Judge.

Glendon Energy Company ["GEC"], the plaintiff, initiated this lawsuit against the Borough of Glendon, various members of the Borough Council of Glendon, and the spouse of one of the Council members. The plaintiff alleged violations of the Fifth and Fourteenth Amendment to the U.S. Constitution, 42 U.S.C. § 1983, 42 U.S.C. § 1988, and numerous state law claims. This court, in an Opinion issued on April 26, 1993, dismissed the case because the plaintiff's claims were not ripe.[1] Currently before this court is GEC's Motion for Reconsideration. For the reasons set forth below, the plaintiff's Motion for Reconsideration will be denied.

## I) BACKGROUND

The plaintiff alleged, for purposes of jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), that the defendants' conduct effectuated an unconstitutional taking, and violated the plaintiff's procedural and substantive due process rights. The facts, which are stated at length in this court's Opinion dated April 26, 1993, will be developed only insofar as they pertain to the Motion before the Court.

The catalyst for this lawsuit is the defendants' putative attempt to hamper the plaintiff's efforts to develop a solid-waste-to-energy resource recovery facility and recycling center ["the Project"] in the Borough of Glendon, Northampton County, Pennsylvania. After the plaintiff's president met with the Council members of the Borough of Glendon in 1986, the Council passed a favorable resolution regarding the plaintiff's Project. In 1987, the Council adopted Ordinance 87–1, which permitted the plaintiff to use the site for the proposed project, and provided that the Borough and the plaintiff would execute a Host Community Agreement. The Agreement designated and authorized the site as a permitted use for the plaintiff's Project provided that the plaintiff complied with certain requirements. In August of 1987, the Borough adopted Ordinance 87–2, which designated that resource recovery facilities are lawful in an area zoned as Industrial–Office. The land that the plaintiff had earmarked for the project was in such an area.

In February, 1987, the plaintiff submitted to the zoning officer of Glendon an application for permission to undertake construction. Ultimately, on August 11, 1989, the plaintiff's request was denied. The denial was purportedly based upon the Borough Council's prior rejection of the site plan. The site plan had been rejected because it did not comply with 53 Pa.Stat.Ann. § 4000.-511(a), which provides that "[t]he [Pennsylvania Department of Environmental Resources] [hereinafter "PaDER"] shall not issue a permit for, nor allow the operation of ... a new resource recovery facility within 300 yards of ... parks ... existing prior to the date the department has received an administratively complete application...." Heil Park, which is owned by the City of

---

1. The court did not examine the plaintiff's state law claims. All of the plaintiff's federal claims were dismissed as unripe, and there was no diversity of citizenship. This court did not have subject matter jurisdiction over the dispute and, therefore, could not exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367(c)(3).

Easton, was within 300 yards of the proposed site.

In February of 1992, the plaintiff purchased approximately nine acres of land, which was contiguous to the property that it had originally acquired. This acquisition enabled the plaintiff to reposition most of the Project more than 300 yards from Heil Park. On February 29, 1992, the plaintiff then filed a Conditional Use Application with the Borough. The sole difference between that application and the one in 1987 was the location of the project. At a hearing, GEC allegedly produced evidence to show that the Project complied with Borough regulations and that the completed facility would not cause any pollution problems. At the conclusion of the hearing, the Council unanimously voted to deny GEC's application. GEC maintains that the Council's determination was not supported by evidence presented at the hearing, and that the hearing was a sham. To date the PaDER has still not issued a permit to the plaintiff.

■ The plaintiff contends that this court erroneously dismissed its substantive due process claim arising out of the denial of its 1992 Conditional Use Permit. The plaintiff argues, contrary to this court's Opinion, that this substantive due process claim is ripe for judicial review. It contends that because the substantive process claims are allegedly ripe, their dismissal will recommence the statute of limitations period. *See* Plaintiff's Motion for Reconsideration at p. 9. Accordingly, the plaintiff is concerned that its substantive due process claim may be time barred when the state proceedings are completed. *Id.* at p. 10.

## II) MOTION FOR RECONSIDERATION

■ The rationale for a motion for reconsideration is to "correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir.1985), *cert. denied,* 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986). Thus, as our sister court has properly held, a motion for reconsideration "addresses only factual and legal matters that the Court may have overlooked.... It is improper on a motion for reconsideration to

'ask the Court to rethink what [it] had already thought through—rightly or wrongly.'" *Ciba–Geigy Corporation v. Alza Corporation,* Civ.A. No. 91–5286, 1993 WL 90412 (D.N.J. March 25, 1993) (citations omitted).

## III) DISCUSSION

As the Third Circuit Court of Appeals recently noted, "ripeness is 'peculiarly a question of timing.'" *Taylor Investment, Ltd. v. Upper Darby Township,* 983 F.2d 1285, 1290 (3d Cir.1993) (quoting *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 580, 105 S.Ct. 3325, 3332, 87 L.Ed.2d 409 (1985)). The holding of *Taylor* is that unless decisions by a municipality are final, claims involving the takings clause and the due process clause are not ripe for judicial review in federal court. Although this court held that Glendon Borough's denial of the 1992 Conditional Use Permit is final, it does not automatically follow that a constitutional challenge to that decision is ripe. "Finality is to be interpreted in a pragmatic way." *New Hanover Township v. United States Corp of Army Engineers,* 992 F.2d 470, 472 (3d Cir.1993). There are other factors that need to be considered before a dispute may be resolved by a federal court. This court "should examine whether the issues are fit for judicial resolution and whether withholding judicial resolution will result in hardship to the parties." *New Hanover Township,* 992 F.2d at 472 (citations omitted).

In *New Hanover Township,* the Third Circuit Court of Appeals found that the issues presented were not ripe for judicial review. New Hanover Township objected to the Army Corp of Engineers issuance of a general permit to New Hanover Corporation ["NHC"] to use land within the township as a municipal waste landfill. Notwithstanding the grant of a general permit by the Army Corp of Engineers, NHC had still not received a water quality certificate from the PaDER, and such approval was necessary for NHC to proceed with the landfill project. Therefore, the court concluded that the Army Corp of Engineer's decision had no immediate impact on the Township. *New Hanover Township,* 992 F.2d at 472. Moreover, the court found that none of the parties would suffer any hardship if it refused to

hear the case at that time. *New Hanover Township*, 992 F.2d at 473.

The *New Hanover Township* case controls the dispute at issue in this case. GEC's attack on the refusal of the 1992 Conditional Use Permit, has no immediate impact on any of the parties.[2] GEC simply cannot begin construction of the Project until it has obtained PaDER approval. As the court in *New Hanover Township* astutely observed "The results of the Pennsylvania process cannot be predicted.... The [parties] should wait until Pennsylvania makes its decision and then, assuming that injury is impending, file suit." *New Hanover Township*, 992 F.2d at 473.

## IV) CONCLUSION

This court concludes that there were no manifest errors of law or fact in its original Opinion, and that there has been no newly discovered evidence that is relevant to this case. Accordingly, for the reasons set forth above the plaintiff's motion for reconsideration shall be denied. Finally, any concerns that the plaintiff has about subsequent statute of limitations problems should be allayed because this court has determined as a matter of law that its substantive due process claims are not ripe for review.

---

**2.** Indeed, GEC requests that, assuming this court grants its motion for reconsideration, any further proceedings be stayed until their other claims become ripe. *See* Plaintiff's Memorandum in Support of Motion for Reconsideration at p. 10.