**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 15-2648 & 15-2649

_____

DAVID F. POLLOCK, as Executor of the Estate of Margaret F. Pollock;
JOHN T. DIBIASE, JR.; JOHN S. FRAYTE;  STUART W. WHIPKEY;
PATRICIA L. CHRISTOPER; LOUIS A. VECCHIO; BESSIE P. VECCHIO;
BARBARA A. MORRIS; GENE M. VIRGILI; ERIN R. VIRGILI;
LLOYD R. SHAFFER, III, on Behalf of Themselves and All Others Similarly Situated

v.

ENERGY CORPORATION OF AMERICA,
Appellant in 15-2648

JOHN T. DIBIASE, JR.; JOHN S. FRAYTE; STUART W. WHIPKEY;
PATRICIA L. CHRISTOPHER; LOUIS A. VECCHIO; BESSIE P. VECCHIO;
GENE M. VIRGILI; ERIN R. VIRGILI; LLOYD R. SHAFFER, III,
Appellants in 15-2649

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. No. 2-10-cv-01553)
District Judge:  Honorable Robert C. Mitchell

_____

Argued September 15, 2016

_____

Before: CHAGARES, GREENAWAY, JR., and RESTREPO, *Circuit Judges*.

(Opinion Filed:  October 24, 2016)

Kevin C. Abbott
Stacey L. Jarrell
Nicolle R. Snyder Bagnell          **[ARGUED]**
Justin H. Werner
Reed Smith
225 Fifth Avenue
Suite 1200
Pittsburgh, PA 15222

     Counsel for Appellant/Cross Appellee

William R. Caroselli
David A. McGowan
Caroselli Beachler McTiernan & Conboy
20 Stanwix Street
7th Floor
Pittsburgh, PA 15222

Robert C. Sanders          **[ARGUED]**
12051 Old Marlboro Pike
Upper Marlboro, MD 20772

     Counsel for Appellees/Cross Appellants

———————

OPINION[*]

———————

GREENAWAY, JR., *Circuit Judge*.

Appellant Energy Corporation of America ("ECA") challenges the District Court's

denial of its motion for judgment as a matter of law with respect to the jury verdict in

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

favor of a class of landowners ("Appellees"). Appellees lease the mineral rights to their property to ECA for the purposes of extracting the natural gas therefrom in exchange for royalties equivalent to one-eighth of the net proceeds from the eventual sale of the gas. ECA argues that there was an insufficient evidentiary basis for the jury to find that it breached its lease agreements from November 22, 2006 through March 26, 2012 by improperly withholding post-production costs for transporting and marketing the gas. ECA requests, in the alternative, a new trial on the ground that the District Court erred in allowing testimony by Appellees' expert, a request that the District Court treated as a motion for reconsideration of its earlier decision to allow the expert testimony. For the reasons set forth below, we affirm the judgment of the District Court in its entirety.

## I. BACKGROUND

ECA is an exploration production company that "goes out and looks for places [in which it believes] natural gas may exist . . . and enters into . . . leases with people to lease their mineral rights." (J.A. 1642.) Appellees are a certified class of Pennsylvania landowners who entered into such mineral-rights leases with ECA. Although there is some variation in the terms of the respective leases, "the leases all generally provide that [Appellees] are entitled to a royalty of one-eighth of the net proceeds received from the sale of gas." (J.A. 8.) The Supreme Court of Pennsylvania has held that post-production costs—the transportation and marketing costs incurred once the gas enters the interstate pipeline to bring the gas to market—are properly deductible from the gross proceeds of

3

gas sales prior to the disbursement of royalties, a process called the "netback method."[1]

*Kilmer v. Elexco Land Servs., Inc.*, 990 A.2d 1147, 1149, 1158 (Pa. 2010).

Until 2012, ECA sold the gas it produced exclusively to its affiliate company, EMCO (Eastern Marketing Corporation), which then marketed, shipped, and sold the gas to buyers.[2]  In the ECA-EMCO base contract, ECA is designated "Seller," and EMCO is designated "Buyer."  (J.A. 1947.)  The base contract specifies that "[t]he title to the gas sold and delivered pursuant to this Contract shall pass from SELLER to BUYER's Purchaser(s) at the Delivery/Receipt Point(s) identified on the attached Limited Term Purchase/Sale Agreement(s)."[3]  (J.A. 1948.)

George O'Malley, formerly the Vice President of Accounting for ECA, described the flow of funds for the relevant time period as follows:  (1) EMCO's buyers paid money constituting the gross proceeds from the gas sale into ECA's concentration account, or the account in which "ECA kept all the cash related to all its entities."  (J.A. 1621.)  O'Malley explained that the buyers' payments "were received into the ECA

---

[1] The netback method does not permit deduction of the costs incurred in extracting gas from the land, nor does it contemplate the deduction of "any cost[s] incurred after the gas is sold."  (J.A. 1820; *see Kilmer*, 990 A.2d at 1149.)

[2] Randall C. Farkosh, the Vice President of Marketing for ECA, testified that, in marketing and shipping the gas, "EMCO actually acted as the agent for ECA."  (J.A. 1691–92.)  In 2012, marking the end of the time period relevant to the case, "EMCO merged into the parent company" and "no longer exists."  (J.A. 1706.)  ECA now directly markets, sells, and transports the gas it produces.

[3] The base contract is silent with respect when title passes from ECA to EMCO, a necessary intermediate step in the passage of title from ECA to EMCO's buyers.

concentration account on behalf of EMCO" and remained in the ECA account, but were put on EMCO's books.[4]  (J.A. 1645.)  (2) EMCO then paid ECA "the net proceeds of gas sales" by check each month.  (3) These checks were then "deposited by ECA back into [its] concentration account."[5]  (J.A. 1645–46.) (4) Finally, ECA paid one-eighth of the money it received to Appellees.

On November 22, 2010, Appellees filed a complaint against ECA; they filed an amended complaint on March 4, 2011.  On March 28, 2011, ECA moved to dismiss the amended complaint; the District Court granted this motion in part and dismissed it in part by order dated August 22, 2011.  The claims were further honed by cross-motions for summary judgment that the District Court granted in part and dismissed in part on January 24, 2013.  After disputes surrounding class certification, discovery issues, and motions *in limine* as to projected expert testimony,[6] trial began on March 2, 2015.

---

[4] O'Malley stressed that the books of the two corporations were kept separately, and, indeed, the District Court instructed the jury that "[t]he parties agree that ECA and EMCO were separate, independent corporations" and that "there is no claim in this case that there was anything improper or unlawful about the intercompany accounting between ECA and EMCO."  (J.A. 1860.)

[5] Farkosh testified that the price agreed to between ECA and EMCO was, "[i]n general, . . . the weighted average sales price less a marketing fee of 15 cents and less any applicable transportation."  (J.A. 1684.)

[6] For the purposes of this appeal, only the *Daubert* hearing that took place on February 25, 2015, after which the District Court determined that it would allow testimony by Appellees' proposed expert witness, Julia Bodamer, is relevant, inasmuch as ECA's motion for a new trial challenges this decision.

The jury was called upon to determine whether Appellees had proved, by a preponderance of the evidence, that: (1) Appellees were improperly underpaid royalties, and, if so, that ECA had improperly deducted (2) transportation charges and (3) marketing fees.  On March 5, 2015, the jury rendered a verdict in favor of Appellees on all claims, and the District Court entered judgment in the stipulated amount of $911,922.16—$105,187.65 for interstate transportation charges and $806,734.51 in marketing fees—plus prejudgment interest.  The Court determined, on March 19, 2015, that the total amount ECA owed Appellees was $1,148,018.44.

On April 2, 2015, ECA renewed its mid-trial motion for judgment as a matter of law and moved in the alternative for a new trial, arguing both that the verdict lacked an evidentiary foundation and that admission of testimony by Plaintiffs' expert was error.  The District Court denied this motion on June 18, 2015.

The Court noted that "the question posed [to the jury] was . . . whether ECA deducted charges incurred after it sold the gas and title passed OR deducted charges it did not incur." (J.A. 14.)  Observing that "[t]he jury received evidence that EMCO, not ECA, incurred the marketing costs when it resold the gas to third party purchasers," and that "Plaintiffs' expert . . . testified that title passed at the receipt pool and before any interstate transportation charges were incurred," the Court concluded "that there was sufficient evidence of record for a jury to determine that ECA breached the leases by improperly deducting these post-production charges." (*Id.*)  With respect to the expert testimony, the Court declined to alter the decision it had made in considering ECA's

6

motion in limine, noting that the expert "was sufficiently qualified to present expert testimony regarding the oil and gas industry." (JA 15.) ECA filed a Notice of Appeal with this Court on July 9, 2015.[7]

## II. JURISDICTION & STANDARD OF REVIEW

The District Court had jurisdiction over this case pursuant to 28 U.S.C. § 1332(d)(2)(A). This Court has jurisdiction under 28 U.S.C. § 1291.

"We review *de novo* a denial of a motion for judgment as a matter of law." *Foster v. Nat'l Fuel Gas Co.*, 316 F.3d 424, 428 (3d Cir. 2003) (citation omitted). A renewed motion for judgment as a matter of law "may be granted under Fed. R. Civ. P. 50(b) only if, as a matter of law, the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief." *In re Lemington Home for the Aged*, 777 F.3d 620, 626 (3d Cir. 2015) (quoting *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 249 (3d Cir. 2001)). In considering the motion, a court must "view[] the evidence in the light most favorable to the nonmovant and giv[e] it the advantage of every fair and reasonable inference." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993) (citation omitted).

This Court's "review of the order denying reconsideration is subject to a more deferential and circumscribed standard of review than would apply if we also were to have jurisdiction to consider the underlying dismissal order, as we review only whether

---

[7] Appellees filed a cross-appeal, which they have withdrawn.

7

the District Court's denial of reconsideration constitutes an abuse of discretion." *Long v. Atl. City Police Dep't*, 670 F.3d 436, 446 (3d Cir. 2012).

### III. DISCUSSION

#### A. Motion for Judgment as a Matter of Law

ECA contends, simply, that no evidence supports the jury's verdict that ECA made "any deductions from [the] proceeds" it received from the sale of gas prior to paying royalties to the Appellees. (Appellant Br. 1.) ECA adds that, even if certain costs incorporated into the price paid for the gas "were, incorrectly, considered deductions taken by ECA from royalties," there was no record evidence that the deductions were improper. (*Id.* at 2.) ECA asserts that there is no difference between the royalties Appellees currently receive and those they received when ECA sold its gas to EMCO.

ECA contends that Appellees received the benefit of their bargain—royalties equivalent to one-eighth of ECA's net proceeds—and urges that the jury's verdict to the contrary essentially penalizes ECA for the transparency of its contract with EMCO, which reflects transportation and marketing *costs* that should not be equated with *deductions*. At oral argument, ECA stressed that the verdict grants Appellees the benefit of the higher rate obtained for the third-party sale ultimately made by EMCO without requiring them to share a portion of the costs incurred in receiving that higher rate.

For ECA's arguments to prevail, the record would have to be devoid of "that minimum quantity of evidence" that would permit a jury to reasonably take the obverse

8

view of the royalty payments made during the relevant period. *In re Lemington*, 777 F.3d at 626. We find evidence in the record that exceeds "that minimum quantity."

As Appellees stated at oral argument, there must first be evidence to support the jury's conclusion that ECA took deductions from Appellees' royalties. For this finding, Appellees rely on what they deem a "critical admission" by O'Malley, who indicated that post-production costs, including transportation, are "reflected" in Appellee's royalty statements and that, with respect to those costs, Appellees "bear a share, one-eighth, just as allowed under the leases." (J.A. 1629.) These admissions by ECA's own executive surpass that "minimum quantity of evidence" needed to support a reasonable determination that deductions were made from the royalties.[8]

We turn now to the finding that the deductions were improper both as to transportation and as to marketing costs. Appellees' first argument that these deductions were improper is that they were never incurred by ECA in the course of the dispositive sale in this case—the ECA-EMCO sale.

There is evidence that ECA did not incur transportation costs because the third-party buyers paid a surcharge of fifty cents per each unit of gas sold, which Farkosh agreed was "the cost of having the gas delivered at the point on the interstate system that

---

[8] Even if we view ECA's argument that these are not properly deemed deductions, but rather costs taken from the sale price from ECA to EMCO, as something more than a semantic argument, it is, at root, an argument that the jury misinterpreted the evidence presented. But the jury is the ultimate finder of fact, and "the court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." *Lightning Lube, Inc.*, 4 F.3d at 1166.

the buyer wants it delivered to."[9] (J.A. 1672.) If the third-party buyer paid the transportation costs, the jury could reasonably find that it was a breach of the leases to require Appellees to contribute to costs of transportation that had already been paid.

Similarly, there is evidence to support the jury's conclusion that the marketing costs were improperly deducted from Appellees' royalties. By ECA's own testimony, it sold its gas exclusively to its affiliate, EMCO. Manifestly, there were no marketing costs involved in that transaction; rather, marketing played a part only in establishing a transaction between EMCO and its third-party buyers. It was not unreasonable for the jury to conclude, on the basis of the two-step transactions at issue, that the marketing costs incurred in the second transaction could not properly be "reflected" in royalties paid from the first transaction, or the ECA-EMCO transaction.

In light of this evidence, we conclude that the jury's verdict finds support in the record and our inquiry ends with affirmance of the District Court's denial of ECA's motion for judgment as a matter of law.[10]

## B. Motion for a New Trial/Motion for Reconsideration

[9] ECA contends that it is error to look beyond the leases and the ECA-EMCO agreement to the EMCO-third-party contracts. We find this argument meritless: As Appellees noted at oral argument, all third-party funds went into an account owned and controlled by ECA, and the leases speak to the net proceeds "received" by ECA.

[10] Because we have found more than "that minimum quantity of evidence" needed to support the jury's verdict that the costs were improperly deducted from Appellees' royalties on the theory that they were never incurred by ECA in the course of the first transaction, we need not reach Appellees' second theory of impropriety, namely that the costs were incurred only after title to the gas had passed. Further, neither party bases its prayer for relief or defense of its verdict on a determination of when and where title passed.

As a threshold matter, we note that the District Court properly determined that, because it had "previously held that Julia Bodamer was sufficiently qualified to present expert testimony regarding the oil and gas industry and any attempt to distinguish her testimony could be done on cross examination," and because "ECA move[d] for a new trial by arguing that this Court should not have permitted . . . Bodamer to testify as an expert as to where title passed," it should treat the motion "as one for reconsideration." (J.A. 15.) As this Court has noted, "[t]he purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (quoting *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir. 1985)). Since ECA's motion, in fact, sought correction of, and remedy for, an alleged "manifest error[] of law," the District Court properly construed its motion as a motion for reconsideration.

The District Court did not abuse its discretion in denying that motion. "A proper Rule 59(e) motion . . . must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010). Indeed, "a motion for reconsideration under the Federal Rules [of Civil Procedure] is not properly founded on a request that the Court 'rethink what [it] had already thought through—rightly or wrongly.'" *Youghiogheny & Ohio Coal Co. v. Milliken*, 200 F.3d 942, 954 (6th Cir. 1999) (quoting *Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993)).

11

ECA does not offer any new law, evidence, or argument that, because overlooked, reveals a "clear error of law" or potential for "manifest injustice." Rather, ECA contends that "the district court erroneously admitted expert testimony from Plaintiff's expert Bodamer on the issue of passage of title." (Appellant Br. 52; *see also* Reply Br. 18.) At the *Daubert* hearing, counsel for ECA argued about Bodamer's ability to testify to the passage of title. Then, during an *in camera* conference held when ECA wished to enter an objection to Bodamer's testimony, including her testimony as to title, the District Court determined that it "would let her testify to" where title passed, but asked the parties to agree as to numbers rather than leaving those issues to Bodamer's testimony. (J.A. 1730.) This issue was fully aired before and during trial. The District Court did not abuse its discretion in declining to revisit its determination to allow circumscribed testimony by Bodamer on the issue of title.[11]

## IV. CONCLUSION

[11] ECA makes much of the District Court's remark that "fact witnesses . . . have told us where title passes and I don't think she is in a position to do that" (J.A. 1722), followed by its statement that it had rethought the issue and determined that "to not permit her to [testify as to the areas specified at the *Daubert* conference] sort of cuts the floor out from under [Appellees]" and decision to allow Bodamer to "testify as to anything except the accounting practices of the affiliate company." (J.A. 1728.) Although ECA stresses that this apparent change-of-heart was error, it is clear from the very passages on which ECA's argument relies that the District Court considered in full the claim of error presented in ECA's motion for reconsideration, lending support to, rather than impugning, its decision to deny that motion.

Because we find that the record contained sufficient evidence to support the jury's verdict, and because we find that the District Court did not abuse its discretion in denying ECA's motion for reconsideration, we affirm the judgment of the District Court.